**UNITED STATES of America,**
**Plaintiff,**

v.

**Johnny Arthur NELSON, Allen G. Rader,**
**Nancy Hendricks, Defendants.**

**Cr. A. No. 5475.**

United States District Court
W. D. Arkansas,
Ft. Smith Division.
April 14, 1959.

---◆---

Defendants, pro se.

JOHN E. MILLER, Chief Judge.

The defendant, Allen G. Rader, sometimes referred to as Allen Rader, has filed a motion to vacate the sentences in D.C., 172 F.Supp. 83, in which he alleges that the sentences imposed on certain counts in the various informations are illegal because the offenses charged are merely continuation of the offenses charged in other counts.

On June 16, 1958, the defendant with two other persons appeared with their attorney, Hon. J. Sam Wood, a member of the bar of this court, waived the return of an indictment and consented that the charges be presented by an information. An information was filed in which each defendant was charged in count 1 with the offense of forging and counterfeiting a certain money order described therein. In count 2 the same parties were charged with passing, uttering and publishing as true the forged money order set out in count 1, knowing the same to have been forged.

On the same date the defendants and their attorney stated to the court that they had been arrested on charges then pending in the Northern District of Oklahoma, and expressed a desire to have the case pending therein transferred to this court. The proper procedure was followed, and the charges pending in the Northern District of Oklahoma were duly transferred under Rule 20, Federal Rules of Criminal Procedure, 18 U.S.C.A. The information in the Oklahoma case contained six counts. Counts 1, 2 and 3 charged that the defendant and others named therein on May 9, 1958, with intent to defraud, did falsely make certain money orders therein described. Count 4 charged that on the same date, May 9, the defendants, with intent to defraud, did pass and utter the forged money order described in count 1. Count 5 charged that on the same date, May 9, the defendants, with intent to defraud, did pass and utter the forged money order described in count 2. Count 6 charged that the defendants on May 9, 1958, with intent to defraud, did pass and utter the forged money order described in count 3.

On July 7, 1958, the defendant appeared with his attorney, and stated that he had been arrested on charges pending in the Western District of Michigan, District of Kansas, and Southern District of Iowa, and requested that the charges pending in those courts be transferred to this court under Rule 20, Federal Rules of Criminal Procedure. Accordingly, the cases were transferred under said procedure.

The information that was transferred from the Western District of Michigan contained four counts. Count 1 charged the defendant under the name of Allen Rader, alias Allen Hunter, on April 15, 1958; issued a money order without pre-

viously having paid the full amount of money therefor, with the purpose of fraudulently obtaining a sum of money from the United States. Count 2 charged that on the same date he issued another and different money order without having previously paid the full amount of money therefor, with the purpose of fraudulently obtaining a sum of money from the United States. Count 3 charged that on April 28, 1958, the defendant, with intent to defraud, passed, uttered and published the forged money order described in count 1. Count 4 charged that on April 28, 1958, the defendant, with intent to defraud, passed, uttered and published the forged money order described in count 2.

The case that was pending in the Southern District of Iowa was duly transferred, and therein it was charged in count 1 that the defendant and others named in the information, on May 6, 1958, unlawfully, wilfully, and with intent to defraud, passed, uttered, and published a forged United States postal money order as therein described. In count 2 it was charged that the defendant and others named therein, on May 6, 1958, did unlawfully, wilfully, and with intent to defraud, pass, utter and publish a forged United States postal money order described therein.

The case that was pending in the District of Kansas was duly transferred in accordance with the request of the defendant, and the information in that case charged in count 1 that the defendant on May 9, 1958, falsely altered in a material respect a United States money order by inserting thereon the numerically written amount of $75 in the dollar block of said order, inserting the initials "PMW" on the line designated, "Initial of Issuing Employee," and using a purported office dating stamp showing "Sacramento, California, May 3, 1958" on the face of said order. Count 2 charges that the defendant on May 9, 1958, altered another money order as therein described.

After all the cases in which the defendant had been arrested were transferred from the other Districts to the Western District of Arkansas, the defendant entered pleas of guilty to all counts contained in the informations in all the cases, and on August 1, 1958, the defendant appeared for sentence accompanied by his attorney, and after making a statement in mitigation of punishment was sentenced in Criminal Action No. 5475 to imprisonment for a period of five years on count 1 and five years on count 2, the sentence on count 2 to begin at the expiration of the imprisonment adjudged on count 1, making a total of ten years on the two counts.

In D.C., 172 F.Supp. 83, transferred from the Western District of Michigan, the defendant was sentenced to "five years on count one of the information to run concurrently with the term of imprisonment this day adjudged by this court against this defendant on count one of the information in Criminal Action No. 5475; five years on count two to begin at the expiration of the term of imprisonment herein adjudged on count one, the same to run concurrently with the term of imprisonment adjudged against this defendant on count two of said Criminal Action No. 5475; and five years on each of counts three and four of the information to run concurrently with the terms of imprisonment herein adjudged on counts one and two, and to run concurrently with the said terms of imprisonment adjudged against this defendant on counts one and two in said Criminal Action No. 5475."

In D.C., 172 F.Supp. 83, transferred from the District of Kansas, the defendant was sentenced to "five years on count one of the information to run concurrently with the term of imprisonment this day adjudged by this court against this defendant on count one of the information in Criminal Action No. 5475; and five years on count two to begin at the expiration of the term of imprisonment herein adjudged on count one, the same to run concurrently with the term of imprisonment adjudged against this defendant on count two of said Criminal Action No. 5475."

In D.C., 172 F.Supp. 83, transferred from the Northern District of Oklahoma, the defendant was sentenced to "five years on count one of the information to run concurrently with the term of imprisonment this day adjudged by this court against this defendant on count one of the information in Criminal Action No. 5475; five years on count two to begin at the expiration of the term of imprisonment herein adjudged on count one, the same to run concurrently with the term of imprisonment adjudged against this defendant on count two of said Criminal Action No. 5475; and five years on each of counts three, four, five and six of the information to run concurrently with the terms of imprisonment herein adjudged on counts one and two, and to run concurrently with the said terms of imprisonment adjudged against this defendant on counts one and two in said Criminal Action No. 5475."

In D.C., 172 F.Supp. 83, transferred from the Southern District of Iowa, the defendant was sentenced to "five years on count one of the information to run concurrently with the term of imprisonment this day adjudged by this court against this defendant on count one of the information in Criminal Action No. 5475; and five years on count two to begin at the expiration of the term of imprisonment herein adjudged on count one, the same to run concurrently with the term of imprisonment adjudged against this defendant on count two of said Criminal Action No. 5475."

On August 7, 1958, six days after the defendant had been sentenced, he filed a petition to withdraw pleas of guilty in all the cases and enter pleas of not guilty. The court denied his petition and filed an opinion, in which the court reviewed the various proceedings resulting in the imposition of the sentences. United States v. Nelson, D.C.W.D.Ark., 172 F.Supp. 83.

Subsequent to the overruling of the motion to withdraw the pleas of guilty and enter pleas of not guilty, the defendant wrote the Judge of this court several letters.[1]

1. In this letter of August 17, 1958, the defendant stated:

"I can only say that when I appeared in your court I had every intention of never getting into trouble again. I am in love with Nancy Hendricks and I did ask for permission from the Marshal's office to get married. I never had any one in my life before and now I have Nancy and my soon coming child. Sir, I beg of you to please give me some consideration toward a reduction in sentence. I was in jail for three months awaiting sentence and was truly under a great strain. I realize I have been wrong in my every action. For this I must pay and all I can do is promis [sic] you that I will never be in any trouble again. I have accepted Christianity while here in jail, before going to court, and I am going to base my life and future on this."

On August 27, 1958, he wrote:

"I face a very critical situation and can only ask that you grant some consideration. I realise my mistakes are many and I alone am to blame for my present circumstances. I am going to attend schools and take advantage of every opportunity during my stay here so that I can face the world and become a useful citizen. This I promis [sic] you.

My chances for a parole from this institution are very small because of my prior trouble. This means I must serve six years and eight months. I have a mother that is now 78 years old and is in poor health. I also have other responsibilities that the court is already aware of. For these reasons I beg of you to give my plea some consideration. I have no money to help Nancy threw her problems or even pay hospital bills for my soon coming child. I am greatly concerned over these matters for trying to accept responsibility was my downfall. I realized to late that good things don't come easy. I can realize the courts position in not wishing to give me a time reduction but if at all possible would you please give me the time I spent in jail awaiting trial. I was there three months and the money orders I was tried for was transferred one month after I was incarserated. Even these three months will be a great help to me since I must serve such a long time."

On November 10, 1958, he wrote:

"I am writing in regards to my recent trial in your court. I have done considerable research since my incarseration, into various laws and rulings from the United States Court of Appeals and

In this setting the petition for reduction of sentence is before the court. Specifically the defendant contends that the acts constituted only a continuing offense, and that the record shows that the postal money orders were altered at the same time, date and place, and that they were uttered and published on the same

the Supreme Court, and found that I have grounds to file a motion for a reduction in my sentence under Title 28, Sec. 2255 [28 U.S.C.A. § 2255]. I would like to know your Honor if you will give me a hearing. I ask only that I be given a chance to prove my point of law. I ask for no special favors of the court, only to be heard. I am writing your Honor to ask the court for this consideration. If the court feels it has already done all possible then I may be able to file in the Distric in which the Dept. of Correction Bureau of Prisons have there office in Washington, D.C. Will you please inform me if the court will hear my motion."

On November 17, 1958, the court answered the defendant's letter of November 10, in which the court stated:

"I am in receipt of your letter of November 10 and note that you desire to file a motion under Title 28, U.S.C., Sec. 2255.

"You are at liberty to file a motion under that section of the statute any time, and in the event you file a motion, it will be given consideration and acted upon in accordance with what I conceive to be the law."

Subsequent to November 17 the defendant wrote the Clerk for a transcript, which the Clerk furnished with the exception of the transcript of the Court Reporter made at the time the various cases were transferred and pleas of guilty entered. On March 3, 1959, he wrote the court and stated that he had not received a transcript of the proceedings on the various arraignments, and that he would greatly appreciate a copy so that he might further study his case. He further said:

"I ask you, your Honor, to grant this request, so I may at least be given the opportunity to file my motion for a reduction in sentence. I have no intention of trying for my freedom, only a reduction from this very, very long sentence."

On March 19, 1959, the court replied to the defendant's letter of March 3, and advised him that the court did not think a transcript of the proceedings in court would be of any value merely in support of a motion for reduction of sentence, and that in the court's opinion the sentences were very moderate in view of the crimes that were committed by him and the others, and further stated:

"If you desire a complete transcript of the proceedings at the various appearances that you made in these cases, you may write Mr. Ben Mosley, Court Reporter, Federal Building, Fort Smith, Arkansas, and arrange to pay him for making a transcript."

The present motion was filed April 10, 1959, and prior to filing it, the defendant on April 6, 1959, wrote the court a letter, in which he said:

"I sincerely hope you will grant a hearing and take into consideration the facts of my lack of legal training. I have tried in every way by numerous laws to show merit for my petition and I feel I have a legal right. However you are to be the Judge of this and all I can do is ask for your consideration. After your last letter I feel I should try to explain some of the things that I feel the court has been misinformed on. It is not possible for anyone to assume that in six days of passing money orders we could have passed the amount the U. S. Postal authorities stated. At the very most there were 20 money orders passed, and sir my past record that consists of three felonys were committed when I was 19 years old. I was tried for auto theft and burglary. The federal placed a warrant against me and in 1957 I was relesed the first time. I realise that these things have little bearing on my present situation, but sir I feel they must have some, for I see inmates every day serving less than 5 years for the same offense I am serving 10 for. I ask you, your Honor, to see only my side of this if you feel I have a legal right. I have served approximately one year and I still must serve six more years on my sentence before relese. This is a long time for a crime that involved no violence and in which I offered to pay the banks back there money and work after my relese to pay back what I couldn't then. I made this offer before I ever paid a lawyer and the U. S. Postal Inspector said he didn't want the money returned, only me in prison. I see now I was mistaken in many ways and I realise I must pay but sir I do not feel I received a legal sentence. I ask you please consider my lack of legal knowlage and grant me a fair and impartial hearing on my petition."

date and in the same place and that this resulted in but one offense. Thus, he contends that a reduction of five years imprisonment is necessary to correct the sentences. In other words, he contends that the forging of the various money orders and the passing, or uttering them, was one continuous act and that only one offense was committed; and that the sentence of five years on count 1 in Criminal Action No. 5475, which charged that the defendant and his associates on May 10, 1958, "with intent to defraud, did falsely make, forge and counterfeit a certain money order described as follows: United States Postal Money Order Number 4–22,271,605 in the amount of $75.00, payable to Adolph O. Dakin from Mary Ann Dakin, dated May 3, 1958, and purporting to be a money order issued by the United States Post Office at Sacramento, California, in violation of 18 U.S. C. 500," is a legal sentence and is the maximum period of imprisonment that may be fixed. He therefore contends that the sentence on count 2, which charged that the defendant and his associates on May 10, 1958, "with intent to defraud, did pass, utter and publish as true the forged money order set out in count 1 hereof, knowing the same to have been forged," is illegal in that the forging of the money order as charged in count 1 was a continuing act or offense, and that his plea of guilty to a forgery committed on May 10, 1958, bars the plea of guilty to the passing and uttering of the instrument on the same date.

The same contention is made with reference to the various counts in the other cases, in that he contends that all the money orders that were forged, were forged on the same date, and that the uttering and publishing of the forged money orders were continuing acts which together constituted only the one offense.

It should be remembered that the information transferred from the Northern District of Oklahoma charged the defendant with forging three separate Post Office money orders on May 9, 1958,

and in counts 4, 5 and 6 he was charged with passing and uttering each of the money orders described in counts 1, 2 and 3; that the information transferred from the Western District of Michigan charged in counts 1 and 2 the forgery of separate money orders on April 15, 1958, and counts 3 and 4 charged the defendant with uttering and publishing each of the forged money orders described in counts 1 and 2 on April 28, 1958; that in the information transferred from the Southern District of Iowa it is charged that the defendant and his associates on the 6th day of May, 1958, unlawfully, wilfully and with intent to defraud did pass and utter certain postal money orders described in each count; and that the information transferred from the District of Kansas charged the defendant on May 9, 1958, with forging two separate postal money orders.

Title 18, U.S.C., § 500, provides:

"Whoever, with intent to defraud, falsely makes, forges, counterfeits, engraves, or prints any order in imitation of or purporting to be a money order issued by the Post Office Department, or by any postmaster or agent thereof; or

\* \* \* \* \* \*

"Whoever, with intent to defraud, passes, utters or publishes, any such forged or altered money order or postal note, knowing any material signature or indorsement thereon to be false, forged, or counterfeited, or any material alteration therein to have been falsely made;

\* \* \* \* \* \*

"Shall be fined not more than $5,-000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 712."

Thus the statute makes it an offense to forge a Post Office money order, and also makes it a separate offense to pass, utter or publish such forged postal money order.

In Harris v. United States, 8 Cir., 1956, 237 F.2d 274, 276, the court beginning at page 276 stated:

"The test to be applied to determine whether there are two offenses or only one is whether each count requires proof of an additional fact which the other does not. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 182, 76 L.Ed. 306; Hewitt v. United States, 8 Cir., 110 F.2d 1; Roark v. United States, 8 Cir., 17 F.2d 570; Spencer v. Cox, 8 Cir., 140 F.2d 73. In Blockburger v. United States, supra, the rule is thus stated:

" 'The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.' "

See also Beddow v. United States, 8 Cir., 1934, 70 F.2d 674; Demaurez v. Squier, 9 Cir., 1941, 121 F.2d 960.

In United States v. Young, D.C.W.D. Wash.1950, 93 F.Supp. 76, at page 79, the court said:

"In any event the contentions of the petitioner are groundless on their merits. It is definitely settled in this Circuit by Demaurez v. Squier, [9 Cir.] 121 F.2d 960, 962; certiorari denied Ex parte Demaurez, 314 U.S. 661, 62 S.Ct. 122, 86 L.Ed. 530; rehearing denied 314 U.S. 714, 62 S.Ct. 364, 86 L.Ed. 569, that 'The offense of forging and the offense of uttering a forged writing in violation of 18 U.S.C.A. § 73, supra, are separate and distinct offenses.' "

In Reid v. Aderhold, Warden, 5 Cir., 1933, 65 F.2d 110, at page 112, the court said:

"At common law forgery and uttering were different substantive crimes. Bishop's New Criminal Law, §§ 523–605. The rule is well settled that, where different offenses denounced in the same statute require different proof, a person may be found guilty of more than one offense under the statute. Petitioner might have been guilty of forging a check without having attempted to utter it, and he might have been guilty of separately uttering it to two or more people without having forged it. It is apparent the three offenses charged in the indictment required different proof to substantiate the charges. Whether the evidence was sufficient is not open to inquiry on habeas corpus."

It is apparent that the proof required to convict this defendant of the crime of forging a Post Office money order would not be sufficient to convict him of the crime of passing and uttering such forged instrument, and since each charge requires proof of an additional fact which the other does not, there is no doubt but that the offenses are different crimes.

■ The defendant has requested that he be given a hearing on the motion, but the court is entirely familiar with every step that was taken in these cases. There is no question about the guilt of the defendant, and neither is there any question but that the offenses of forgery and uttering are separate and distinct crimes. Therefore, no useful purpose would be served in bringing the defendant from the institution where he is now confined for a hearing on the motion.

■ The defendant seems to think that the sentences imposed are excessive, but they are within the provisions of the statute which he violated, not once, but 16 times. He and his associates procured the money order blanks and deliberately started out on a crime spree. The defendant contends that he is deeply in love with his co-defendant in some of the cases, Nancy Hendricks, and professes to have embraced Christianity, and now has a desire to marry Miss Hendricks and try to rehabilitate himself. When he started on the spree over the central states, he was not a stranger to law violations or to the courts, and the court is definitely of the opinion that the punishment assessed is moderate when

all the facts and circumstances are considered, and that no useful purpose could possibly be served by a hearing on the motion.

Therefore an order is being entered today denying the motion.