UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Earl HINES,
Defendant-Appellant.

No. 82–2334.

United States Court of Appeals,
Tenth Circuit.

Feb. 14, 1984.

Certiorari Denied June 11, 1984.
See 104 S.Ct. 3541.

James F. Blackmer, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., Albuquerque, N.M., with him on the

**422**

brief), of the District of New Mexico, appearing for plaintiff-appellee.

Richard M. Borchers, Westminster, Colo., for defendant-appellant.

Before BARRETT and LOGAN, Circuit Judges, and CHILSON *, District Judge.

CHILSON, District Judge.

The appellant will be referred to herein as "the defendant" or "Hines".

On February 28, 1982, the United States Post Office in Tijeras, New Mexico, was burglarized.

On June 3, 1982, a grand jury returned an indictment charging the defendant, Hines, and one, Fernando Herrera, with the commission of twelve crimes committed in the course of and after the burglary.

The indictment charged:

In Count I, a conspiracy to burglarize the post office in violation of 18 U.S.C. § 371 (1982);

Count II: Breaking and entering into the post office to commit larceny in violation of 18 U.S.C. § 2115 (1982);

Count III: Stealing a letter containing a credit card and other letters containing United States Treasury checks in violation of 18 U.S.C. § 1708 (1982)

Count IV: Stealing approximately 800 blank United States Postal Money Order forms in violation of 18 U.S.C. § 500 (1982);

Count V: Stealing a United States Postal Money Order imprinter Serial No. 807590, an instrument designed to be used in preparing and filling out blank United States Money Order forms in violation of 18 U.S.C. § 500 (1982);

Count VI: Stealing approximately $1,835.15 in United States postage stock consisting of stamps and stamped envelopes in violation of 18 U.S.C. § 641 (1982);

Count VII: Altering a blank United States Postal Money Order by imprinting on a blank money order, the amount of $275.00 in violation of 18 U.S.C. § 500 (1982).

Count VIII: Passing and uttering the money order described in Count VII in violation of 18 U.S.C. § 500 (1982);

Count IX: Altering a blank United States Postal Money Order by imprinting thereon the amount of $500.00 in violation of 18 U.S.C. § 500 (1982);

Count X: Passing and uttering the altered money order described in Count IX, in violation of 18 U.S.C. § 500 (1982);

Count XI: Altering a blank United States Postal Money Order by imprinting thereon the amount of $500.00 in violation of 18 U.S.C. § 500 (1982);

Count XII: Passing and uttering the money order described in Count XI in violation of 18 U.S.C. § 500 (1982);

Each of the counts with the exception of Count One, also charged Hines and Herrera with aiding and abetting in the commission of the crimes charged in violation of 18 U.S.C. § 2 (1982).

On June 10, 1982, Hines and Herrera appeared before a United States Magistrate and entered pleas of not guilty to all charges, and the charges were set for trial commencing on July 12, 1982. On motion of Hines' counsel, the trial was postponed to August 9.

On August 6, Herrera entered a plea of guilty to Counts VIII, X, and XII, and the remaining counts against Herrera were later dismissed by the United States.

Trial of the charges against Hines commenced on September 27, 1982, and the jury found Hines guilty on all twelve counts. The Court sentenced Hines to five years imprisonment on Count VI, suspended imposition of sentence on the other counts, and placed him on five years probation on each of these counts. The court ordered the probation on all eleven counts to run concurrently, the probationary periods to com-

* Hatfield Chilson, Senior Judge, United States District Court for the District of Colorado, sitting by designation.

mence upon Hines' release from confinement.

## SUMMARY OF EVIDENCE

The United States Post Office at Tijeras, New Mexico, is a rural post office, located east of Albuquerque, New Mexico.

At trial, a postal clerk at the Tijeras Post Office, Simone Platt, and the postmistress in charge of this post office, Rose Morris, testified that they had seen the defendant make a couple of purchases at the post office in the last few weeks of February 1982. Once he was alone, and once he was in the company of another man whose face they did not see.

Platt testified that after closing the post office the previous evening, she returned on the morning of Sunday, February 28, 1982, to turn off the outside lights. When she arrived, she saw a car parked behind the building, with its hatchback open. Several objects wrapped in white towels were plainly visible inside. Standing near the car was a man she recognized as Hines. When he approached her, she asked him if he needed anything. He said no and inquired in turn if she planned to enter the building. Although that had been her initial intention, Platt said no, and left. Approximately twenty minutes later, another postal employee entered the building and saw that it had been burglarized.

This employee, and others who were summoned to the scene, saw that many envelopes and packages had been removed from post office boxes, slit open and thrown on the floor. Some of these envelopes were subsequently found to have contained missing credit cards and government checks.

Other items stolen included seven to eight hundred blank postal money orders, eighteen hundred dollars worth of stamps, numerous stamped envelopes, and an imprinter that prints the dollar amounts and dates on blank postal money orders. A list which contained the serial numbers of the money orders was missing although copies of it were available.

The stamps, stamped envelopes and money orders had been in a safe which the evidence indicated had been opened by a crowbar and an acetylene torch.

Two Albuquerque women, Natalie Montoya and Lori Hicks, testified that about a week after the robbery, Montoya's cousin, Fernando Herrera, brought a man they later identified as Hines, to their residence, introduced him as "John" and asked if they could both stay there for a few days. Hicks testified that "John" told her that he and Herrera had committed the robbery. She also testified she saw "John" use the imprinter on a money order and then fill in her name, and that "John" then had her pass the money order, which was for $275.00 at a bank and give him the proceeds.

The two men departed the same day, leaving behind two blank money orders, which were each imprinted for $500.00, and a note thanking the women for their trouble, signed by "John". Montoya and Hicks subsequently cashed these money orders at two different banks.

It is admitted that Hines was not in New Mexico at the time these two money orders were cashed.

In early April, a man using the name "John Rankin" tried to pass a money order in San Diego, California. The cashier became suspicious and checked the serial number. It corresponded to that of one of the money orders stolen from Tijeras' Post Office. At trial, the cashier identified the man who attempted to pass the money order as the defendant, Hines.

## ISSUES RAISED ON APPEAL

Hines, by this appeal, raises the following issues:

1. Did the trial court err in not dismissing the conspiracy count at the conclusion of all evidence?

2. Did the trial court err in not requiring an election of charges by the prosecution or merger after conclusion of the trial?

3. Did the trial court err in not granting defendant's motion to dismiss for lack of a speedy trial?

4. Did the trial court err in its verdict form given to the jury?

5. Did the trial court err in not dismissing Counts X and XII?

## 1. DID THE COURT ERR IN NOT DISMISSING THE CONSPIRACY COUNT?

"The gist of the conspiracy offense is agreement among the conspirators to commit the offense, attended by an act of one or more conspirators to effect the object of the conspiracy." *U.S. v. McMahon,* 562 F.2d 1192, 1196 (10th Cir.1977).

"A mutual implied understanding is sufficient so far as the combination or confederacy is concerned, and the agreement is generally a matter of inference deduced from the acts of the persons accused, which are done in pursuance of an apparent criminal purpose." *Colosacco v. U.S.,* 196 F.2d 165, 168 (10th Cir.1952).

"A conspiracy need not be proven by direct evidence, but may be established by circumstantial evidence and the common purpose inferred from the development or combination of circumstances." *U.S. v. Sherman,* 576 F.2d 292, 296 (10th Cir.1978).

While "The commission of a substantive offense and a conspiracy to commit that offense are separate crimes." *U.S. v. Davis,* 544 F.2d 1056, 1058 (10th Cir.1976); ". . . the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself." *U.S. v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947); citing *Pinkerton v. U.S.,* 328 U.S. 640, 644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946).

■ The evidence amply supports the conspiracy charge. The trial court did not err in not dismissing the conspiracy count at the conclusion of all of the evidence.

## II. DID THE TRIAL COURT ERR IN NOT REQUIRING AN ELECTION OR MERGER OF THE CHARGES?

The defendant contends the indictment contains an unjustifiable multiplicity of charges and that the trial court should have merged Counts II, III, IV, V, and VI into one count of theft; Counts VII, IX and XI into one count of alteration of blank money orders, and Counts X and XII into one count of passing and uttering the money orders described in Counts IX and XI.

Defendant also contends that the trial court should have merged the counts in the same manner for the purpose of imposing sentence.

In *Blockburger v. U.S.,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the United States Supreme Court used the following test to determine whether or not separate counts of an indictment are multiplicitous:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . "A single act may be an offense against two statutes and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

*Id.* at 304, 52 S.Ct. at 182.

Count II charged defendant with breaking and entering into the post office with intent to commit larceny in violation of 18 U.S.C. § 2115 (1982).

Count III charged defendant with stealing letters containing a credit card and United States Treasury checks in violation of 18 U.S.C. § 1708 (1982).

Count VI charged defendant with stealing stamps and stamped envelopes in violation of 18 U.S.C. § 641 (1982).

■ Each of Counts II, III, and VI charge a violation of a different statute.

Each requires proof of facts which the other two do not require. The separate counts were proper under *Blockburger.*

We have also considered the question of whether or not Counts IV, V, VII, VIII, IX, X, XI, and XII which allege violations of 18 U.S.C. § 500 (1982) should have been merged in whole or in part for either trial or for imposition of sentences.

18 U.S.C. § 500 (1982) deals with U.S. money orders. In nine separate paragraphs, § 500 sets forth acts which constitute a violation of that statute.

The indictment charges in separate counts, eight violations of the statute as follows:

Count IV: Stealing approximately 800 blank money orders;

Count V: Stealing a machine instrument (an imprinter) used in filling out blank money orders;

Count VII: Altering a blank money order by printing thereon "275.00";

Count VIII: Passing and uttering the altered money order described in Count VII or aiding and abetting therein;

Count IX: Altering a blank money order by imprinting thereon "$500.00";

Count X: Passing and uttering the $500.00 money order described in Count IX or aiding and abetting therein;

Count XI: Altering a blank money order by imprinting thereon "$500.00";

Count XII: Passing and uttering the money order described in Count XI or aiding or abetting therein.

The jury found the defendant guilty on all of the foregoing eight counts and the evidence amply supports the jury's verdicts.

■ We hold that the counts were not duplicitous and should not have been merged in whole or in part either for purposes of trial or for imposition of sentence and that the court did not err in denying defendant's motion for merger of counts and the defendant's motion to require the United States to make an election of the charges which it would rely upon the trial.

See the following cases which are cited in the annotation in 18 U.S.C.A. § 500 (West 1976).

*U.S. v. Jacek,* 298 F.2d 429 (3rd Cir.1962) *cert. denied,* 370 U.S. 952, 82 S.Ct. 1601, 8 L.Ed.2d 817 (1962); *Harrison v. King,* 111 F.2d 420, (8th Cir.1940); *U.S. v. Carpenter,* 151 F. 214, (9th Cir.1907); *U.S. v. Jacek,* 196 F.Supp. 152 (D.Pa.1961), aff'd, 298 F.2d 429 (3rd Cir.1962), *cert. denied,* 370 U.S. 952, 82 S.Ct. 1601, 8 L.Ed.2d 817 (1962); *U.S. v. Nelson,* 172 F.Supp. 86, (D.Ark.1959); *U.S. ex rel. Davis v. Hill,* 17 F.Supp. 646, (D.Pa. 1937).

## III. DID THE TRIAL COURT ERR IN NOT GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF A SPEEDY TRIAL?

The Speedy Trial Act of 1974, as amended in 1979, 18 U.S.C. § 3161, et seq. (1982), provides in § 3161(c)(1) that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date that the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

Section 3161(h)(1)(F)(I) and (J) of the Speedy Trial Act states that:

> (h) The following periods of delay shall be excluded in ... computing the time within which the trial of any ... offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
>
>  ....
>
> (F) delay resulting from any pre-trial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
>  ....

(I) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

The record in this case shows the following:

On June 10, Hines was arraigned and on the same date trial was set on the court's calendar beginning July 12.

On June 15, Hines moved that the trial setting of July 12 be vacated. The court granted the motion and reset the trial for August 9.

On June 16, Hines moved for a separate trial from the trial of Herrera and also moved to sever Counts VII through XII from Counts I through VI. The court took these motions under advisement.

On August 6, three days before the trial was to commence on August 9, Hines' counsel moved the court that he be permitted to withdraw as counsel because of differences between the defendant and his counsel. Hines did not object and the motion was granted on the same day.

On August 9, new counsel was appointed for Hines and since it was obvious that new counsel was not prepared to go to trial on August 9, the trial setting was vacated.

On August 31, the court was notified that Hines desired to change his plea and for this purpose, Hines appeared in open court on September 9 for a hearing on a change of plea. At the hearing on September 9, the court was advised that a plea agreement had not been reached and Hines' counsel requested additional time to file pre-trial motions. The request was granted.

On September 15, the court set a trial date of September 27.

Although defendant's new counsel was appointed on August 9, it was not until August 23 that he filed a formal motion asking for leave to file additional motions. No motions were filed until September 17, on which date Hines' counsel filed three pre-trial motions and on September 23, filed an additional motion for dismissal of the action because the defendant was denied a speedy trial under the Speedy Trial Act.

On the morning of September 27, the court disposed of the defendant's motions and trial was commenced on the same day.

The first trial date set by the court was July 12, and upon motion of the defendant, this trial setting was vacated and a new trial date was set for August 9. Both trial dates were well within the seventy-day period required by the Speedy Trial Act.

One hundred and nine days elapsed between June 10, when the defendant first appeared before a judicial officer, and the commencement of the trial on September 27.

We now consider the excludable time provided by the Speedy Trial Act for the period from June 10 until August 9, when new counsel was appointed to represent Hines.

In this period, Hines, on June 16, filed a motion to sever his trial from the trial of Herrera.

On June 18, the court took the motion under advisement. On August 6, when Herrera entered a plea of guilty, the motion to sever became moot. However, only thirty days of the period during which the court had the motion under advisement is excludable in computing the seventy-day period. See 18 U.S.C. § 3161(h)(1)(J) (1982).

During the period after August 9 when new counsel was appointed for Hines, Hines' counsel, on August 23, filed a motion for leave to file additional pre-trial motions which was granted on September 9. Under the provisions of the Speedy Trial Act, the period from August 23 to September 9 is excludable in computing the seventy-day limitation. The excludable time is eighteen days.

It was not until September 17, that the defendant filed his pre-trial motions. The motions were ruled upon on September 27.

Under the Speedy Trial Act, the time from September 17 to September 27, (eleven days) is excludable in computing the seventy-day time limitation.

See 18 U.S.C. § 3161(h)(1)(F) (1982).

During the period from August 9 when new counsel was appointed for Hines until the trial on September 27, the time excludable in the computation of the seventy-day limitation period totals twenty-nine days.

■ The total period of excludable time under the Speedy Trial Act amounts to fifty-nine days and when deducted from the one hundred and nine-day period, the trial of the defendant commenced fifty days after the defendant first appeared before a judicial officer on June 10, 1982.

The trial court properly denied the defendant's motion for dismissal of the action on the grounds that the trial was in violation of the time requirements of the Speedy Trial Act.

### DID THE TRIAL COURT ERR IN ITS VERDICT FORM GIVEN TO THE JURY?

Defendant, Hines, asserts that the form of the verdicts were confusing, and that the verdicts should therefore be set aside.

The defendant did not object to the form of verdicts, nor did defendant propose or tender to the court a verdict form satisfactory to him.

■ The verdict forms used by the court are those commonly used in this Circuit and in view of the court's instructions, were not confusing or misleading.

The court instructed the jury:

Forms of verdict have been prepared for you. They read, as to each count, "We, the jury, find the defendant, Robert Earl Hines," either guilty or not guilty "of the offense charged in the counts of the indictment," to be signed by the foreman.

You will take these forms to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreman fill in and sign the forms to state the verdict upon which you agree, and then return with your verdict to the courtroom.

A separate offense is charged in each count of the indictment. Each offense charged and the evidence applicable to it should be considered separately. The fact that you may find the defendant guilty or not guilty as to any of the offenses charged should not control your verdict as to any other offense charged.

The trial court did not err in its verdict form given to the jury.

### DID THE TRIAL COURT ERR IN NOT DISMISSING COUNTS X AND XII?

The defendant asserts that the evidence was insufficient to support his conviction of the Counts X and XII which accused him and Herrera of aiding and abetting Hicks and Montoya in passing the money orders that were left at their house.

"To be an aider and abettor requires that a defendant 'associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seeks by his action to make it succeed.' The proof must establish the commission of the offense by someone and the aiding and abetting by the defendant so charged."

*White v. U.S.,* 366 F.2d 474, 476 (10th Cir.1966), quoting *Roth v. U.S.,* 339 F.2d 863, 865 (10th Cir.1964).

■ From a review of the evidence, we find ample evidence to support the jury's verdict of guilty of Counts X and XII.

Judgment AFFIRMED.