**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward Larry TURNER, Defendant-Appellant.**

No. 93-30252.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1994.

Decided June 30, 1994.

William I. Lee, Asst. Federal Public Defender, Tacoma, WA, for defendant-appellant.

Arlen R. Sturm, Asst. U.S. Atty., Tacoma, WA, for plaintiff-appellee.

Before: POOLE, BRUNETTI, and KLEINFELD, Circuit Judges.

Opinion by Judge BRUNETTI.

BRUNETTI, Circuit Judge:

Defendant Edward Larry Turner ("Turner") appeals his jury convictions for (1) postal robbery in violation of 18 U.S.C.[1] § 2114; (2) five counts of altering money orders in violation of § 500; (3) three counts of passing altered money orders in violation of § 500; (4) possession of stolen property in violation of § 641; (5) two counts of money laundering in violation of § 1956; and (6) attempted money laundering in violation of § 1956.

Turner's first contention on appeal is that the district court improperly admitted into

---

1. All statutory references are to Title 18 of the United States Code unless otherwise indicated.

evidence a cap which Postal Inspector Stanley Pilkey ("Pilkey") removed without a warrant from Turner's property bag at the Pierce County Jail. "A mixed question of law and fact in a warrantless search and seizure case is reviewed *de novo*." *United States v. Johnson*, 820 F.2d 1065, 1072 (9th Cir.1987).

Turner admits that the initial inventory search upon his arrest on state charges constituted a proper exception to the warrant requirement; however, he contends that Pilkey's subsequent seizure without a warrant of Turner's cap violated his Fourth Amendment rights. This argument fails, since the initial search and seizure of Turner's personal items, including his cap, was proper, and the cap remained in custody at the jail. *See id.* (when initial examination of money upon defendant's arrest on state charges was proper, second search relevant to unrelated federal charges to obtain serial numbers from the bills which had been placed in a sealed envelope in the jail did not require a warrant); *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir.) ("once an item in an individual's possession has been lawfully seized and searched, subsequent searches of that item, so long as it remains in the legitimate uninterrupted possession of the police, may be conducted without a warrant"), *cert. denied*, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983); *see also United States v. Thompson*, 837 F.2d 673, 675 (5th Cir.) (second look at keys by a federal agent did not unduly intrude upon defendant's expectation of privacy when police had lawfully viewed the keys earlier at the time of inventory), *cert. denied*, 488 U.S. 832, 109 S.Ct. 89, 102 L.Ed.2d 65 (1988); *United States v. Jenkins*, 496 F.2d 57, 73 (2d Cir.1974) (federal agent could view money to compare serial numbers when the police seized the money from the defendant after arresting him on unrelated state charges and kept it an envelope in a jail safe for safekeeping apart from the defendant's other belongings), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975).

We also reject Turner's allegation that even if Pilkey could properly view the cap at the jail, he could not take it without a warrant. We have held that if an initial seizure of clothing of the defendant is "incident to a lawful arrest and therefore proper[,] ... [o]nce the [clothes] were properly in the custody of the [sheriff's office], the clothing could be removed or transferred without benefit of official process." *United States v. Oaxaca*, 569 F.2d 518, 523 (9th Cir.), *cert. denied*, 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978). In this case, the cap was properly seized from Turner and thus could be removed without a warrant, since it remained the "legitimate uninterrupted possession of the police." *Johnson*, 820 F.2d at 1068, 1072.

Turner's second argument is that the district court improperly admitted into evidence statements that Turner made from jail in a telephone conversation with Pilkey. Whether a defendant was constitutionally entitled to *Miranda* warnings is an issue of law reviewed de novo. *United States v. Khan*, 993 F.2d 1368, 1375 (9th Cir.1993).

We have declined to establish a per se rule that a defendant is in "custody" for *Miranda* purposes simply because that defendant is in prison. *See Cervantes v. Walker*, 589 F.2d 424, 427 (9th Cir.1978) (finding that the Supreme Court's decision in *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), did not create a rule that "interrogation during prison confinement constitutes custodial interrogation requiring *Miranda* warnings"). Instead, to determine whether *Miranda* warnings were necessary in a prison setting, "we look to some act which places further limitations on the prisoner." *Id.* at 428. Under this concept, we consider

the language used to summon the individual, the physical surroundings of the interrogation, the extent to which he is confronted with evidence of his guilt, and the additional pressure exerted to detain him ... to determine whether a reasonable person would believe there had been a restriction of his freedom over and above that in his normal prisoner setting.

*Id.*

In this case, Turner called Pilkey the day after Pilkey had met with Turner's wife,

given her his business card, and told her that if Turner wished to talk to Pilkey about the robbery, Turner could call the number on the card. During the telephone conversation, Turner asked Pilkey "what he was looking at." Pilkey explained the penalty for robbery and stated that "the best thing [for Turner] to do would be to clear the matter up." Turner then responded "I think I'm in deeper than I thought. I got to think about this. How long do I have to think about it?" These statements were admitted at trial.

Turner initiated the call and asked questions of Pilkey. He was not pressured by Pilkey, other agents, or jail personnel to answer any questions or to discuss the robbery. Nor was he detained, since he could have hung up the phone at any time and could not have reasonably believed that his freedom was restricted over and above that in his normal prison setting. Thus, regardless of the facts that Turner was in jail on unrelated state charges and spoke to a government agent, as opposed to a member of the jail staff, he was not in "custody" for *Miranda* purposes, and the district court did not err by admitting the statements he made to Pilkey.

Turner's final claim is that the district court erred by not reversing his convictions for altering money orders and for passing an altered money order, since the government failed to present any evidence that Turner "altered" the money orders. In reviewing a district court's denial of a motion for acquittal, "we must view the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to sustain the government." *United States v. Price,* 623 F.2d 587, 591 (9th Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

Turner contends that he cannot be convicted of "altering" or passing "altered" money orders, as charged in the indictment, because he did not change anything on the stolen blank money orders; rather, he claims that he "forged" the money orders by imprinting values on the blank money orders. Therefore, Turner asserts that the government improperly charged him by using the word "alter" rather than the word "forged."

■ This argument lacks merit. We fail to accept Turner's claim that he did not "alter" money orders by imprinting values on the blank orders. Fraudulently filling out blank money orders can be considered "altering" money orders. *Cf. United States v. Hines,* 728 F.2d 421, 425 (10th Cir.) (upholding defendant's conviction for *altering* a money order under § 500 when he stole money orders and imprinted values using a stolen imprinter and finding that charges were not multiplicious), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3523, 82 L.Ed.2d 831 (1984); *United States v. Bryant,* 612 F.2d 799, 803 (4th Cir.1979) (stating that defendant could have "altered" a money order from its blank form and still be convicted for receiving or possessing a blank money order form); *United States v. Di Pietroantonio,* 289 F.2d 122, 123 (2d Cir.1961) (court refused to vacate defendant's conviction on claim of variance when indictment charged him with falsely *altering* money orders by placing fictitious names on the orders when it found he had *counterfeited* material signatures on money orders).

■ Turner's contention that he could not have "altered" the money orders because they were not "issued" also fails. Turner seems to argue that a requirement under § 500 is that in order to convict a defendant for altering money orders, the money orders cannot be stolen but rather must be issued by the post office for a certain amount, which is later changed by the defendant. We find no authority supporting this proposition.

The third paragraph of § 500 permits punishment under this section for "[w]hoever falsely alters, in any material respect, any such money order or postal note." "[A]ny such money order" refers to the preceding second paragraph of § 500 which states "[w]hoever forges or counterfeits the signatures or initials of any person authorized to issue money orders upon or to any money order, postal note, or *blank therefor* provided or issued by or under the direction of the Post Office Department or Postal Service ..." *Cf. Bryant,* 612 F.2d at 803 (finding that "any such money order" in the seventh paragraph of § 500 referred to the description of money orders as "any blank money

order form" in the preceding sixth paragraph). The third paragraph covers the stolen money orders in this case because they were blank money orders provided by the post office. Since the postal service printed and provided the money orders involved in this case, they were "issued" or "provided," and the fact that they were stolen does not change this outcome. Turner could therefore be convicted for "alteration" because he imprinted values onto blank money orders stolen from the post office. Thus, the district court properly denied Turner's motion for a judgment of acquittal on his convictions for altering money orders and passing an altered money order.

AFFIRMED.