STATE of Iowa, Plaintiff–Appellee,

v.

**Shawn Michael BENTLER,
Defendant–Appellant.**

No. 07–1187.

Court of Appeals of Iowa.

Oct. 29, 2008.

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, H. Craig Miller, County Attorney, and Scott Brown, Assistant County Attorney, for appellee.

Heard by VOGEL, P.J., and MAHAN and MILLER, JJ.

MAHAN, J.

The trial court, sitting without a jury, convicted Shawn Bentler of five counts of first-degree murder. Bentler appeals, contending his Fourth Amendment right to be free from unreasonable search and seizure was violated when the district court allowed into evidence a pair of socks transferred to Iowa law enforcement after those socks had been seized by Illinois law enforcement pursuant to a lawful custodial arrest. We affirm.

## I. Background Facts.

At 3:38 a.m. on October 14, 2006, a 911 call was made from the landline of Sandra and Mike Bentler. The recording of that 911 call establishes that a person identified as Shayne Bentler tells the operator that her mother told her to call and that "[m]y brother's gonna do something, I don't know what.... My, mom's yelling at him, saying Shawn, don't.'" A woman's voice can be heard in the background screaming, "Please don't! Please Shawn don't!" There is a popping sound. Seconds later, Shayne screams, "Shawn, no!" and the line goes dead.

While the 911 operator was speaking with Shayne, a second call came in to the 911 system. After the call from Shayne ended, the 911 operator attempted to

switch over to the other call, but there was no caller on the line. The operator called the number of the unanswered call and got Shelby Bentler's voice mail. The number was for a cellular telephone registered to Sandra Bentler. The 911 operator then called the Bentler house and got no answer.

At 3:55 a.m. law enforcement arrived at the Bentler home. When the house was searched, the bodies of defendant's mother, Sandra; defendant's father, Michael; and defendant's three sisters, Sheena, Shelby and Shayne, were found. Michael's body was found in the doorway to the master bedroom. Sandra's body was found at the top of the stairs. Shayne's body was found in a closet with parts of the telephone receiver around her and the imprint of the telephone on her face. She had been shot through the head with a .22 caliber rifle, as had the four other Bentler family members. Shelby's body was also found in a closet, with a cellular phone near her body. Sheena's body was found on her bed in a lower level of the house.

Shawn Bentler's cellular phone was found at the family residence. A call had been placed from this phone to a friend of Shawn's at 12:09 a.m. on October 14. Shawn, the only remaining living member of the Bentler family, lived in Quincy, Illinois, a one-hour-twenty-minute drive from the Bentler house.

Iowa law enforcement contacted Quincy law enforcement and asked that Shawn Bentler be placed under surveillance. Bentler left his residence around 10:00 a.m. on October 14 on his motorcycle and, at about 10:20 a.m., was stopped by Quincy police for driving without a valid license and on an outstanding arrest warrant. Bentler was taken into custody. Quincy officers did not tell him about the murder of his family in Iowa.

Iowa law enforcement officers traveled to Quincy to interview Bentler. After Bentler was interviewed, and pursuant to Quincy jail booking procedures, he was strip-searched and given jail attire. His street clothing and personal effects were seized and placed in four paper bags, which were stapled shut with identifying information on the exterior of the bags. At about 9:30 p.m. on October 14, the bags were given to Iowa Department of Criminal Investigation (DCI) agent Rick John who, at about 10:20 p.m., placed them in the backseat of a car driven by DCI agent Darrell Simmons to be taken to the Van Buren County Sheriff's office.

On October 15, 2006, charges were filed in Iowa accusing Shawn Bentler of the murder of his family members. Arrest warrants were issued and served on Bentler in Illinois. Bentler waived extradition, and the Quincy jail transferred custody of Bentler to Iowa law enforcement officials. Bentler was transported to the Van Buren County jail.

On October 16 John discovered Simmons still had possession of the bags containing Bentler's personal effects because the investigation had kept Simmons from going to the sheriff's office. John reclaimed possession of the paper bags and delivered them to the Van Buren County Sheriff's office. On October 18 the bags containing Bentler's clothing and personal effects were placed into the evidence closet of the Iowa jail.[1] The only key to the locked evidence closet was in agent Richard Rahn's possession.

Some time later, agent Rahn entered the evidence closet and opened the paper bags. He saw what he thought might be blood on the socks worn by Bentler at the

---

1. Bentler does not here challenge the chain of custody.

time of his arrest. Rahn contacted the county attorney, who advised Rahn to obtain a search warrant before any further search of the items.

On October 24 an application for search warrant was drafted by a DCI agent other than Rahn. The application sought to search the items in the bags as "[p]roperty relevant and material as evidence in a criminal prosecution." The affidavit in support of the application set forth, among other things, the facts surrounding the 911 telephone calls; the arrest of Shawn Bentler in Quincy, Illinois; the seizure of his personal effects and clothing at the time of his booking; the fact that when Bentler was interviewed on October 14 he told interviewers that his water was shut off at his residence in Quincy; and

> [b]ased upon my experience as a Special Agent, DNA, blood, hair, fibers and other trace evidence can easily be transferred from the body of a person onto his clothing. This is compounded when there is no water in the residence to clean up with after a crime has been committed.

> Based upon my experience, it is common for evidence; ie ... DNA, blood, hair, fibers and other trace evidence to be left at the crime scene by the suspect while in commission of the crime. It is also common for DNA, blood, hair, fibers and other trace evidence from the victim(s) to transfer onto the suspect or the suspect's clothing while a crime is being committed.

No mention was made in the affidavit of Rahn opening the bags or his observations.

A search warrant was issued on October 25, 2006. Subsequent testing of the socks in the evidence bag determined that the stains on the socks worn by Bentler on the day of his arrest contained blood matching the DNA of Sandra Bentler.

Bentler filed a motion to suppress the clothing and any evidence derived from the clothing contending, among other things, that the initial seizure by Iowa law enforcement agents on October 14, 2006, was unreasonable and without probable cause and therefore illegal under the Fourth Amendment to the United States Constitution and under article I, section 8 of the Iowa Constitution. He also contended the October 25, 2006 search warrant was constitutionally defective.

Following a hearing, the district court concluded:

> Although Agent Rahn might have been within his legal authority to examine the contents of the paper bags prior to the issuance of a search warrant, this Court need not decide that issue. The search warrant was obtained lawfully, approved by a judge whose analysis of the probable cause for issuance of the search warrant was exclusive of any knowledge of the examination of the clothing conducted by Agent Rahn. The judge was not even made aware of the fact that an examination had occurred. Accordingly, the evidence obtained from the clothing was obtained legally. The legality of the search is not tainted under the Fourth Amendment by Agent Rahn having previously examined the clothing. Accordingly, Defendant's Motion to Suppress the search and seizure of his clothing should be overruled.

Bentler was subsequently convicted of five counts of first-degree murder and now appeals.

Bentler does not challenge the seizure of his clothing by Illinois law enforcement. *See Illinois v. Lafayette,* 462 U.S. 640, 645–46, 103 S.Ct. 2605, 2609–10, 77 L.Ed.2d 65, 71 (1983) (upholding inventory search of arrestee's personal effects under routine booking procedure); *United States v. Edwards,* 415 U.S. 800, 804, 94 S.Ct.

1234, 1237, 39 L.Ed.2d 771, 776 (1974) ("Nor is there any doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis or that the test results are admissible at trial.").

Rather, Bentler claims Iowa law enforcement illegally seized his property from Illinois law enforcement.

## II. Standard of Review.

■ Bentler raises a constitutional challenge to the seizure and search of his clothing. Our review of constitutional issues is de novo. *State v. McGrane*, 733 N.W.2d 671, 675 (Iowa 2007). Our court independently evaluates the defendant's claim under the totality of the circumstances. *Id.* The scope and purpose of the search and seizure clause of article I, section 8 of the Iowa Constitution is coextensive with the federal court's interpretation of the Fourth Amendment. *State v. Carter*, 733 N.W.2d 333, 337 (Iowa 2007).

## III. Merits.

■ We engage in a two-step analysis to determine whether an unconstitutional search and seizure, in violation of the Fourth Amendment, was conducted. First, the defendant must show he had a legitimate expectation of privacy in the area searched. *State v. Halliburton*, 539 N.W.2d 339, 342 (Iowa 1995). "The determination of whether a person has a legitimate expectation of privacy with respect to a certain area is made on a case-by-case basis, considering the unique facts of each particular situation." *State v. Breuer*, 577 N.W.2d 41, 45 (Iowa 1998). Moreover, the expectation of privacy must be one that society considers reasonable, an issue that involves reference to understandings that are recognized and permitted by society. *State v. Ortiz*, 618 N.W.2d 556, 559 (Iowa 2000). Second, if the defendant had a legitimate expectation of privacy, we must then determine whether the State unreasonably invaded the protected interest. *Id.*

Bentler argues that he had a reasonable, albeit limited, expectation of privacy in his items after they were seized by Illinois officials, which would prohibit the transfer of his property to others without a warrant. We disagree. We note that most courts deciding this issue under the Fourth Amendment conclude that once an inmate's property is taken and inventoried and placed in a property room, the inmate's expectation of privacy is substantially or entirely reduced to the point that no constitutionally protectable interest remains. *See, e.g., United States v. Turner*, 28 F.3d 981, 983 (9th Cir.1994), *cert. denied* 513 U.S. 1158, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995) (finding cap was properly seized from defendant and thus could be removed without a warrant, since it remained in the "legitimate uninterrupted possession of the police."); *United States v. Thompson*, 837 F.2d 673, 675 (5th Cir.), *cert denied*, 488 U.S. 832, 109 S.Ct. 89, 102 L.Ed.2d 65 (1988) (permitting a federal agent's second look at items taken by state police pursuant to a valid arrest on state charges as the defendant could not reasonably expect a right to privacy in the serial numbers of his personal money stored in police custody); *United States v. Jenkins*, 496 F.2d 57, 73 (2d Cir.1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975) (holding that where New Jersey authorities had arrested defendant for carrying a concealed weapon, the subsequent inspection by a federal agent of money taken from defendant and held for safekeeping did not require a warrant); *State v. Copridge*, 260 Kan. 19, 918 P.2d 1247, 1251 (1996) (holding that where defendant is taken into custody and defendant's ef-

fects are lawfully seized and retained for safekeeping, the defendant has no expectation of privacy and officers may thereafter take a "second look" at the inventoried personal effects without a search warrant and remove any evidence); *see also Wallace v. State*, 373 Md. 69, 816 A.2d 883 (2003), and cases cited therein.

In *United States v. Oaxaca*, 569 F.2d 518, 523 (9th Cir.), *cert. denied*, 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978), the Ninth Circuit Court of Appeals upheld a warrantless seizure of jailed suspects' shoes some six weeks after arrest where both defendants and their shoes remained in lawful custody until the time when the shoes were taken for use as evidence. *Oaxaca*, 569 F.2d at 524. The court noted: "Both the defendants and their shoes remained in lawful custody until the time when the shoes were taken for use as evidence. To require a warrant under these circumstances would be to require a useless and meaningless formality."

Based upon all the foregoing, we conclude Bentler had no reasonable expectation of privacy in the property seized upon his booking. "Indeed, it is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as a result of a lawful arrest." *Edwards*, 415 U.S. at 806, 94 S.Ct. at 1238, 39 L.Ed.2d at 777.

We also conclude Bentler did not have a legitimate privacy interest in his personal effects after they had been lawfully seized by Illinois law enforcement and validly transferred to Iowa law enforcement. Evidence legally obtained by one law enforcement agency may be made available to another law enforcement agency without a warrant. *Oaxaca*, 569 F.2d at 523 (holding that once clothes were properly in custody of sheriff's office, the clothing could be removed or transferred without benefit of official process); *United States v. Lewis*, 504 F.2d 92, 104 (6th Cir.1974), *cert. denied* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975) (allowing evidence in federal trial obtained without a warrant from state police officers after use in state court); *see also Turner*, 28 F.3d at 983 (finding cap properly seized upon arrest on state charges could be removed from county jail by federal postal inspector without a warrant). Consequently, we find that Iowa law enforcement had no duty to obtain a warrant before viewing the items legally seized in Illinois and transferred from Illinois to Iowa law enforcement.

Because we conclude Bentler did not have a reasonable expectation of privacy concerning the items taken upon his booking, we need not determine whether the State unreasonably invaded a legitimate privacy interest. However, we agree with the district court that the warrant issued on October 25, 2006, was supported by probable cause. *See State v. Naujoks*, 637 N.W.2d 101, 108 (Iowa 2001) (noting that the standard for probable cause is whether a person of reasonable prudence would believe "evidence of a crime might be located in the particular area to be searched"). Therefore, the search of Bentler's personal effects worn at the time of his arrest pursuant to that warrant was constitutionally permissible.

Bentler has argued that if we find his trial counsel did not preserve his constitutional challenge, such failure constituted ineffective assistance of counsel. Our resolution of his challenge moots this claim.

## IV. Conclusion.

We hold Bentler had no reasonable expectation of privacy in his personal effects properly seized by Illinois law enforcement pursuant to standard booking procedures

and transferred to Iowa law enforcement. The subsequent search of those items pursuant to a search warrant did not violate Bentler's Fourth Amendment rights. We affirm.

**AFFIRMED.**