**STATE of Iowa, Appellee,**

v.

**Jose E. CANAS, Appellant.**

No. 98–1030.

Supreme Court of Iowa.

June 3, 1999.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines and James Kivi, Assistant Attorneys General, Richard R. Phillips, County Attorney, and Kerrie Snyder and Alan Ostergren, Assistant County Attorneys, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

The defendant appeals from his convictions for possession with intent to deliver a controlled substance (second or subsequent offense) in violation of Iowa Code sections 124.401(1)(b)(7) and 124 .411 (1997), a drug tax stamp violation in violation of Iowa Code sections 453.B.1, .3, .7 and .12, introduction of a controlled substance into a detention facility in violation of Iowa Code section 719.8 and assault resulting in bodily injury in violation of Iowa Code sections 708.1 and 708.2(2). He challenges the district court's denial of his motion to suppress and the sufficiency of the evidence to support his conviction for assault causing injury, and he claims his trial counsel was ineffective. We affirm in

part, reverse in part, and remand for a new trial on the count of possession with intent to deliver.

## I. Background Facts and Proceedings

The defendant, Jose E. Canas, was the subject of an outstanding arrest warrant due to his failure to appear in court. Officers Jirak and Havemann and Lieutenant Ryan learned the defendant might be at a local motel and went there to execute the warrant. They observed the defendant standing in the doorway to his room. When the defendant saw them, he entered his room and slammed the door. The officers knocked on the door, and when the defendant opened it, they pulled him outside where they handcuffed and arrested him. Nothing in the record indicates the defendant was ever allowed to reenter the room.

Sometime after the defendant had been arrested, Officer Jirak and Lieutenant Ryan each entered the motel room. The record does not indicate for what purpose they entered, what they did therein, or what they might have seen.

Officer Havemann also entered the defendant's motel room and searched it. He testified the defendant was not in the room at the time of the search.[1] An unzipped red-nylon bag was found on a nightstand approximately four to six feet from the doorway. Inside the bag Officer Havemann found a box of plastic sandwich baggies, a cigarette lighter, two straws and a hollow pen. There was testimony indicating these were items associated with drug use. Officer Havemann testified the contents of the bag were not readily apparent and he had to search through it to ascertain its contents.

After the defendant arrived at the jail, he was directed to take a shower. A jailer noticed the defendant delayed in removing

---

1. The relevant portion of Officer Havemann's testimony at the suppression hearing provides:

 Q. When you went in to search the room, he'd already been taken off to jail, and I'm talking about Mr. Canas now, right? A. That's correct.

his underwear and kept them with him while he showered. When the jailer asked to see the underwear, the defendant shoved him against a wall. During a struggle with the defendant, the jailer observed him trying to get something out of the underwear to throw in the toilet. Immediately after the incident, two plastic bags containing a white powdery substance were found on the floor of the shower. The larger bag contained a golf ball size quantity of methamphetamine which weighed 13.58 grams. The smaller packet contained .25 grams of methamphetamine.

The defendant was charged with possession with intent to deliver a controlled substance (second or subsequent offense), a drug tax stamp violation, introduction of a controlled substance into a detention facility, and assault resulting in bodily injury. The defendant filed a motion to suppress the evidence found in his motel room. The motion was denied.

At trial it was disclosed that Canas served as an informant for the Muscatine County Drug Task Force. Canas testified that as part of his work as a confidential informant he had been trying to arrange a buy with a big dealer ("Mr. X"). He claimed that before he could arrange a controlled buy, he had unexpectedly been paid a visit from two of Mr. X's men and they had left the two packets of methamphetamine with him. Before the defendant could contact the authorities at the drug task force, he was arrested on the outstanding warrant and the drugs were found in his possession. He testified he had no intent to sell them.

The jury found the defendant guilty of all four charges. The defendant now appeals.

## II. Motion to Suppress

### A. Scope of Review

 The defendant challenges the district court's denial of his motion to suppress. We review this constitutional question de novo in light of the totality of the circumstances. *State v. Cadotte*, 542 N.W.2d 834, 836 (Iowa 1996). We are bound by findings of fact which underlie the district court's ruling if they are supported by substantial evidence. *Id.* In reviewing the district court's ruling, we consider both the evidence presented at the suppression hearing and that introduced at trial. *See State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998).

### B. Search Incident to Arrest

 The Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures. *State v. Cook*, 530 N.W.2d 728, 731 (Iowa 1995). Searches and seizures conducted without prior approval by a judge or magistrate are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. *Id.* The State has the burden to prove by a preponderance of the evidence that a warrantless search falls within one of the exceptions. *Cadotte*, 542 N.W.2d at 836.

 The State alleges the search of the defendant's bag in the motel room constituted a valid search incident to a lawful arrest. The United States Supreme Court has previously recognized there is ample justification for the search of an arrestee's person and the area within his or her immediate control. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040 23 L.Ed.2d 685, 694 (1969). The purpose of such a search is to prevent the arrestee from destroying evidence or gaining possession of a weapon which could be used to resist arrest or effect an escape. *See id.* A search incident to an arrest must be substantially contemporaneous with the arrest and confined to the immediate vicinity of the arrest. *Vale v. Louisiana*, 399 U.S. 30, 33, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409, 413 (1970). If a search of a residence is to be upheld as a search incident to an arrest, that arrest must take place within the residence, not somewhere outside. *See id.*

We have previously upheld searches incident to an arrest when the arrestees remained within the immediate vicinity of the area to be searched. *See State v. Shane*, 255 N.W.2d 324, 327 (Iowa 1977) (motel room); *State v. Canada*, 212 N.W.2d 430, 432 (Iowa 1973) (hotel room). In both *Shane* and *Canada* the defendants were physically present in the room while it was being searched.

■ The critical distinction presented in this case is the fact that the defendant was not in the motel room at the time of the search. The defendant's bag on the nightstand was no longer an "area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. The South Carolina Supreme Court similarly recognized that the search of a motel room after its occupants had exited the room and been taken away could not be justified as a search incident to an arrest. *See State v. Brown*, 289 S.C. 581, 347 S.E.2d 882, 885 (1986). We reject the State's argument that the warrantless search of the bag could be justified as a search incident to an arrest.[2]

## C. Emergency Aid Exception

The State alternatively argues that the search of the defendant's motel room falls within the emergency aid exception to the warrant requirement. It contends Officer Havemann searched the room because he knew the defendant used drugs and he was concerned that motel cleaning staff might enter the room and come into contact with controlled substances or needles.

■ Our previous cases have recognized that an emergency situation may give rise to exigent circumstances sufficient to support a warrantless search. *See, e.g., State v. Carlson*, 548 N.W.2d 138, 143 (Iowa 1996); *State v. Emerson*, 375 N.W.2d 256, 259 (Iowa 1985). Yet in both *Carlson* and *Emerson* the police were responding to the reasonable belief that an emergency existed and a warrantless search of a residence was necessary to render aid and assistance to a person located therein. In this case there was no similar belief that someone remained in the motel room who needed emergency aid. The mere suspicion that drugs or drug paraphernalia might be present could not justify a warrantless search under the emergency aid exception.

## D. Harmless Error

■ The State contends that even if the search of the contents of the defendant's bag was unconstitutional, the admission of the evidence constituted a harmless error. Most constitutional errors do not automatically require the reversal of a conviction if the error is harmless. *State v. Hensley*, 534 N.W.2d 379, 382 (Iowa 1995). The State must establish beyond a reasonable doubt that an error in the admission of evidence obtained from an unlawful search was harmless. *See State v. Baldwin*, 396 N.W.2d 192, 197 (Iowa 1986). A reviewing court must consider more than just the amount of untainted evidence against the defendant, it must also weigh that evidence against the probative force of the tainted evidence. *See State v. Jefferson*, 574 N.W.2d 268, 275 (Iowa 1997).

**2.** We note that both the United States Supreme Court and this court have upheld the search of the contents of a passenger compartment of a vehicle as part of a search incident to an arrest even when a defendant has been removed from the vehicle and secured elsewhere. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Edgington*, 487 N.W.2d 675 (Iowa 1992). However, searches of this type are limited to situations in which one's arrest involves some type of occupancy in a vehicle. The Court in *Belton* specifically noted:

> Our holding today does no more than determine the meaning of Chimel's principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.

*Belton*, 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3, 69 L.Ed.2d at 775 n. 3.

There are two steps in the harmless error analysis. We first consider all of the evidence the jury actually considered, and then we weigh the probative force of that evidence against the erroneously admitted evidence. *See id.* The inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict *actually* rendered in this *trial* was surely unattributable to the error. *Id.*

Based on our review of the record, we cannot conclude the error was harmless. The question before the jury was whether the defendant possessed the methamphetamine with the intent to deliver. It is undisputed the defendant was in possession of the drug. However, other than the officer's testimony that the amount exceeded what one would have for personal use, there was no evidence that the drugs were intended for delivery.

Officer Havemann testified a typical dosage of methamphetamine is one-tenth of a gram and the defendant possessed over 135 times that amount. Yet, with the exception of the single quarter-gram packet, the methamphetamine had not been divided and repackaged for individual sale. Nor was there evidence the defendant possessed large amounts of unexplained cash or that he had previously engaged in the delivery of illegal drugs. Each of these are factors we have previously associated with an intent to deliver. *See State v. Adams,* 554 N.W.2d 686, 692 (Iowa 1996); *State v. McDaniel,* 512 N.W.2d 305, 308 (Iowa 1994).

Given the State's lack of other evidence on the issue of intent and the defendant's explanation for his possession of the drugs, the existence of the baggies in the defendant's motel room became critical to establishing an intent to deliver. It is significant that Officers Jirak and Havemann and Lieutenant Ryan all testified that the baggies were indicative of drug dealing. The evidence of the baggies was crucial to linking up the defendant's possession of the drugs with an intent to deliver. Under these circumstances, we cannot find the guilty verdict actually rendered in this trial was "surely unattributable" to the improperly admitted evidence. *Jefferson,* 574 N.W.2d at 275. We reverse the conviction for possession with intent to deliver and remand for a new trial in which the evidence seized from the motel room is excluded.

### III. Assault Causing Injury

The defendant claims the trial court erred in denying his motion for a judgment of acquittal on the charge of assault causing bodily injury. He contends that since the jailer's pain or physical impairment could not have lasted for more than a few seconds there was insufficient evidence to support a finding that the jailer suffered a bodily injury.

Review of a challenge to the sufficiency of the evidence is on assigned error. *State v. McPhillips,* 580 N.W.2d 748, 753 (Iowa 1998). We view the evidence in the light most favorable to the State, but consider all the evidence, not just that which supports the verdict. *See State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980). We will uphold a jury's verdict if it is supported by substantial evidence. *McPhillips,* 580 N.W.2d at 752. Evidence is substantial if it could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* at 752–53.

Assault causing bodily injury is defined in Iowa Code section 708 .2(2) which provides in relevant part:

> A person who commits an assault, as defined in section 708.1, without the intent to inflict a serious injury upon another, and who causes bodily injury or disabling mental illness, is guilty of a serious misdemeanor.

We have defined "bodily injury" as "physical pain, illness, or any impairment of physical condition." *State v. Gordon,*

560 N.W.2d 4, 6 (Iowa 1997); *State v. McKee*, 312 N.W.2d 907, 913 (Iowa 1981). In adopting the Model Penal Code definition of bodily injury we noted:

> Bodily injury ordinarily "refers only to injury to the body, or to sickness or disease contracted by the injured as a result of injury." Injury includes "an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm ... hurt, damage, or loss sustained. . . ."

*McKee*, 312 N.W.2d at 913 (citations omitted).

The evidence in this case revealed the defendant used his fist to strike the jailer in the chest, pushed him over a bench, and knocked the wind out of him. The defendant argues any pain, illness, or impairment of physical function sustained by the jailer could not have lasted for more than a few seconds since the jailer did not require medical treatment or have any visible injuries (e.g. cuts, scratches, or bruises). The defendant contends such a temporary, incidental discomfort could not have been the type of injury which the legislature would have deemed to be a "bodily injury."

Neither our prior cases nor the Model Penal Code appear to impose a temporal requirement which would require that a bodily injury last for a certain amount of time. The defendant clearly inflicted pain upon the jailer, and there was sufficient evidence to support the defendant's conviction for assault causing bodily injury.

### IV. Introducing a Controlled Substance into a Detention Facility

The defendant argues his trial counsel was ineffective in failing to move for a judgment of acquittal on the charge that he introduced a controlled substance into a detention facility. Specifically, he claims his counsel should have argued the offense was a specific intent crime and his counsel was ineffective in failing to argue his submission to police authority at the time of his arrest negated any finding that he voluntarily introduced the drugs into the jail.

We review ineffective assistance claims de novo. *State v. Williams*, 574 N.W.2d 293, 300 (Iowa 1998). The defendant has the burden to prove his trial counsel breached an essential duty and he was prejudiced as a result. *See McPhillips*, 580 N.W.2d at 755.

#### A. General or Specific Intent Crime

It does not appear this court has previously addressed whether Iowa Code section 719.8 is a general or specific intent crime.[3] We have previously addressed the distinction between general and specific intent crimes.

> "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a further consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent."

*State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996) (quoting *Eggman v. Scurr*, 311 N.W.2d 77, 79 (Iowa 1981)). The term "specific intent" describes a special mental element above and beyond any mental state required with respect to the actus reus of the crime. *See Buchanan*, 549 N.W.2d at 294.

A review of the statutory language reveals that the offense criminalizing the introduction of controlled sub-

---

**3.** Iowa Code section 719.8 provides:

> A person not authorized by law who furnishes or knowingly makes available a controlled substance to an inmate at a detention facility or correctional institution, or at an institution under the management of the Iowa department of corrections, or who introduces a controlled substance into the premises of such an institution, commits a class "D" felony.

stances into a detention facility does not require an intent to do any further act or achieve some additional consequence other than the prohibited conduct of introducing a controlled substance into a detention facility. It is a general intent crime, and counsel was not ineffective in failing to challenge the sufficiency of the evidence to establish the defendant's intent.

### B. Submission to Police Authority

■ The defendant argues that his submission to police authority at the time of his arrest and his subsequent transport to the county jail negated any finding that he voluntarily committed the offense of introducing a controlled substance into a detention facility. He claims his trial counsel was ineffective in not pursuing a directed verdict on this basis. The defendant also argues that in order to avoid a charge of introducing a controlled substance into a detention facility he was required to admit his possession of the drugs before he entered the jail. He contends this severely and impermissibly burdened his Fifth Amendment right to remain silent.

With respect to both of the defendant's arguments, we find this case is governed by our decision in *State v. Elliott*, 557 N.W.2d 887 (Iowa 1996). In *Elliott* the police responded to a report of gunfire at the defendant's residence. Elliott was arrested for discharging a firearm within city limits and was transported to the police station. At the station, it was discovered he had a gun in his possession and he was charged with carrying a concealed weapon. While the defendant's possession of the weapon was legal while he was present on his own property, it became a criminal offense once he was removed from the premises.

We rejected Elliott's claim that his ability to act voluntarily was negated by his submission to police authority. *Id.* at 889. We noted that the defendant could have disclosed the existence of the gun before his continued possession of it became ille-

gal. *Id.* Similarly, the defendant in the case at bar had the option of disclosing the presence of the drugs concealed on his person before he entered the jail and became guilty of the additional offense of introducing controlled substances into a detention facility.

■ The defendant contends that to require him to admit his possession of the drugs would have impermissibly burdened his Fifth Amendment right to remain silent. We disagree. The criminal process includes many situations which require a defendant to make difficult judgments regarding which course to follow. *See State v. Gay*, 526 N.W.2d 294, 297 (Iowa 1995) (defendant incarcerated in Illinois was not denied due process where he was forced to either waive his constitutional right to an extradition hearing or be convicted for failing to appear in an Iowa criminal proceeding). Sometimes the choices faced by a defendant may have the effect of discouraging the exercise of constitutional rights but that does not mean such choices are prohibited.

> Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not always forbid requiring him to choose. The deciding factor is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.

*Id.* (citations omitted).

The United States Supreme Court has held a defendant was not compelled to incriminate himself merely because he had to make a choice which implicated his Fifth Amendment right to remain silent. *See, e.g., McGautha v. California*, 402 U.S. 183, 217, 91 S.Ct. 1454, 1472, 28 L.Ed.2d 711, 732 (1971) (the policies underlying the privilege against compelled self-incrimination are not offended when defendant in capital case yields to the pressure to testify on the issue of punishment at the risk of damaging his case on guilt); *Williams v. Florida*, 399 U.S. 78, 83, 90 S.Ct. 1893,

1896–97, 26 L.Ed.2d 446, 450–51 (1970) (privilege against self-incrimination not violated by requiring defendant to give notice of alibi defense and alibi witnesses).

The defendant in *Elliott* was faced with essentially the same situation that confronted the defendant in this case. Had Elliott disclosed the existence of the gun before being removed from his own property he could have avoided incurring the concealed weapons charge. However, in doing so he would have disclosed the location of evidence relevant to the firearms offense of which he had already been charged. We held that requiring the defendant to choose between avoiding the commission of the carrying weapons offense and his right not to incriminate himself on the other charge did not engender a constitutional transgression. *Elliott*, 557 N.W.2d at 889. We are not persuaded that the circumstances of this case would warrant any different result, and we conclude trial counsel breached no duty in failing to raise this issue.

## V. Conclusion

The warrantless search of the defendant's motel room was not a valid search incident to an arrest nor did it come within the emergency aid exception. The defendant's motion to suppress should have been granted, and the admission of the evidence seized from his motel room was not a harmless error. We reverse the defendant's conviction on the charge of possession with intent to deliver and remand for a new trial.

There is no temporal requirement with respect to the duration or extent of a bodily injury sustained by an assault victim. There was sufficient evidence to support the defendant's conviction for assault causing bodily injury.

Defense counsel was not ineffective in failing to challenge the sufficiency of the evidence to support the defendant's conviction of introducing a controlled substance into a detention facility. The offense was a general intent crime, the defendant's

ability to act voluntarily was not negated by his submission to police authority, and the defendant's conviction did not impermissibly burden his Fifth Amendment right to remain silent.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**