# IN THE COURT OF APPEALS OF IOWA

No. 24-0198
Filed August 20, 2025

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**SHEILA MARIE SUNDALL,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for O'Brien County, Nancy L. Whittenburg, Judge.

A defendant appeals her convictions for introducing a controlled substance into a detention facility and possessing a controlled substance. **AFFIRMED IN PART, REVERSED AND REMANDED FOR DISMISSAL IN PART.**

Jamie Hunter (argued) of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau (argued), Assistant Attorney General, for appellee.

Heard at oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

Twice in 2022, law enforcement arrested Sheila Sundall while she possessed methamphetamine in her bag. Both times, she tried unsuccessfully to convince the officers to let her leave the bag unattended at the place of arrest. The first time, the officer refused and carried her bag in the front of the patrol car to the county jail. After a jailer found the methamphetamine during a booking search, the State charged her with introducing a controlled substance into a detention facility. The second time, a different officer searched the bag with Sundall's consent—finding methamphetamine. The State charged her with possessing a controlled substance. In separate prosecutions, juries convicted her as charged.[1]

Sundall challenges both convictions. On the first offense, we find insufficient proof that she introduced the methamphetamine into the detention facility. So we reverse that conviction and remand for dismissal. On the second offense, ample evidence supports the jury's verdict that she possessed the methamphetamine discovered in the bag that she had been carrying. And the district court properly denied as untimely her new-trial motion alleging the verdict was against the weight of the evidence. So we affirm that conviction.

## I.      Facts and Prior Proceedings

*First Arrest*. In May 2022, law enforcement was investigating an alleged assault at a residence in Sheldon. The victim named Sundall as the suspect. While he was securing the residence awaiting a search warrant, O'Brien County Sheriff's Deputy Keven Van Meeteren saw two women approach the residence.

---

[1] The court held a joint sentencing hearing for the two convictions. And Sundall filed a single notice of appeal listing both district court numbers.

The deputy told them the residence was "off limits." He recognized one of them as Sundall, who was carrying a large bag. Because she was the suspect of the assault investigation, the deputy cuffed Sundall's hands behind her back.

After handcuffing her, Deputy Van Meeteren asked "if her name was Sheila Sundall, even though [he] knew Sheila from [his] years of law enforcement." Then Sundall retrieved her wallet from the bag she was carrying and pulled out her identification card for the officer. The deputy "thought it was odd" that Sundall insisted on showing her identification, given that he knew who she was. After that, the wallet and identification card were returned to the bag.[2]

Deputy Van Meeteren then secured Sundall in the backseat of the patrol car driven by Deputy Lee Vellema. Until then, Sundall had been cooperative. But when the deputy placed her bag on the floorboard of the front passenger seat of the patrol car, her demeanor changed. Sundall "started arguing" and said she "didn't want the bag along with her in the car." Instead, she wanted to leave it there. But Deputy Van Meeteren refused her request: "Due to her personal items being in the bag in terms of her wallet with her ID and stuff like that, I wasn't just going to leave it sit out there on the driveway or on the common drive area of that trailer park." The deputy also testified that he did not know whether Sundall lived at the residence that was to be searched.

From there, Deputy Vellema transported Sundall and her bag to the county jail, where she was searched by Sergeant Barb Jacobsma. The sergeant found nothing on Sundall's person. Deputy Vellema also carried Sundall's bag inside

---

[2] The deputy could not recall whether he or Sundall's companion dropped the wallet back into the bag.

and placed it on the counter to be searched. When Sergeant Jacobsma took out the wallet that contained Sundall's identification card to search, she also found "a partial like Slurpee type straw and a little baggie of a clear rock substance." That substance field tested positive for methamphetamine, and further testing by the Division of Criminal Investigation (DCI) confirmed that it was methamphetamine. Sundall had not revealed that the methamphetamine was in her bag.

The State charged Sundall with introducing a controlled substance into a detention facility, a class "D" felony, in violation of Iowa Code section 719.8 (2022). A jury convicted her of that offense after a one-day trial in June 2023. After that verdict, Sundall moved for judgment of acquittal and in arrest of judgment—arguing the State offered "insufficient evidence" of the "introducing" element. The court denied that post-trial motion.

*Second Arrest.* In September 2022, Sheldon Police Officer Timothy Loeschen saw Sundall driving without a valid license. She parked at a fast-food restaurant and left the car carrying a backpack and a duffel bag. The officer intercepted Sundall about half a block from where she parked. After Officer Loeschen arrested Sundall for the driving offense, he asked if she wanted to take her bags to the jail. She said no; she wanted to leave them in the car that she had been driving because its owner would pick it up soon. She expressed this wish even though one of the car's windows was malfunctioning and would not close.

Soon, Officer Eric Meinecke arrived at the scene. When he asked Sundall if there was anything illegal in her bags, she said no. He then asked if he could look in the bags, to which Sundall responded, "I don't care." While Officer Loeschen placed Sundall in the car, Officer Meinecke searched her bags. He

found an eyeglass container holding two baggies of "a white crystalline substance," as well as a glass pipe with a bulb. He found another baggie containing the same substance in the backpack.[3] Also in the backpack was Sundall's wallet and identification card.

The State charged Sundall with possession of methamphetamine, third or subsequent offense, a class "D" felony, in violation of Iowa Code section 124.401(5)(a). A jury convicted her of that offense after a two-day trial in October 2023. Sixty-nine days after the verdict, Sundall moved for judgment of acquittal and motion in arrest of judgment, or alternatively for a new trial. The court denied the motion as untimely. Sundall moved to reconsider, arguing that her counsel had been busy with another case and missed the deadline. She asked the court to consider the motion on its merits. But again, the district court denied the motion.

The court scheduled a joint sentencing hearing for the two convictions in January 2024. After that hearing, the court imposed concurrent five-year suspended prison sentences and placed Sundall on probation for two years. Sundall now appeals, challenging both convictions.

II.     **Scope and Standards of Review**

We generally review the denial of a motion in arrest of judgment for an abuse of discretion. *State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008). That means "the trial court's discretion was exercised on clearly untenable or unreasonable grounds." *Id.* But when the question is one of statutory

---

[3] The substances in the baggies tested positive for methamphetamine in the field. DCI Laboratory testing later confirmed the field test results.

interpretation—whether the terms of the statute are broad enough to cover the actions of the accused, *see State v. Oldfather*, 306 N.W.2d 760, 763 (Iowa 1981)— our review is for errors at law. *See State v. Flynn*, 13 N.W.3d 843, 846 (Iowa 2024).

We also review challenges to the sufficiency of the evidence for correction of errors at law. *See State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). The jury's verdict is binding on us if it is supported by substantial evidence. *Id.* Evidence is substantial if it would "convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "[W]e view the evidence in the light most favorable to the State . . . ." *Id.*

As for Sundall's challenge to the denial of her motion for new trial on the possession offense, we review for an abuse of discretion. *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). "[T]he district court has considerable discretion when determining a motion for new trial under the weight-of-the-evidence test." *Id.*

### III. Analysis

### A. Introducing a Controlled Substance into a Detention Facility

*Motion in Arrest of Judgment.* Sundall first claims that her conviction for introducing a controlled substance into the detention facility cannot stand as a matter of law. She contends the district court should have granted her motion in arrest of judgment under Iowa Rule of Criminal Procedure 2.24(3)(c) ("Such motion shall be granted when upon the whole record no legal judgment can be pronounced."). True, she cited rule 2.24(3)(c) in her post-trial motion. But that motion blurred the sufficiency of the evidence with the applicability of section 719.8. *See Oldfather*, 306 N.W.2d at 762 ("A motion in arrest of judgment

may not be used to challenge the sufficiency of evidence."). In *Oldfather*, the court analyzed whether the defendant's act could conceivably fall within the language of the charging statute. *Id*. at 764. By contrast, Sundall's motion focused on the sufficiency of the evidence for introducing contraband. Because her motion in arrest of judgment was in fact a challenge to sufficiency of the evidence, we move to that issue.

*Substantial Evidence*. The State charged Sundall with introducing a controlled substance into a detention facility. *See* Iowa Code § 719.8.[4] The court instructed the jury on the crime's three elements:

> 1. The O'Brien County Jail is a detention facility.
> 2. On or about the 13th day of May, 2022, [Sundall] introduced methamphetamine into the O'Brien County Jail.
> 3. Methamphetamine is a controlled substance.

Sundall contests the second element, arguing the State did not prove that she introduced methamphetamine into a detention facility when it was Deputy Vellema who carried her bag into the jail. Sundall adds that the statute allowed the deputy as a person "authorized by law" to bring a controlled substance into the facility. *Id.*

The State does not dispute those facts. Without question, Sundall no longer possessed the methamphetamine when it was introduced into the jail. But possession doesn't matter, according to the State. It cites *State v. Caquelin,* for the notion that "one might introduce a controlled substance into a detention facility without necessarily being in possession of the substance." 702 N.W.2d 510, 512

---

[4] The statute reads in whole: "A person not authorized by law who furnishes or knowingly makes available a controlled substance or intoxicating beverage to an inmate at a detention facility, or who introduces a controlled substance or intoxicating beverage into the premises of such a facility, commits a class 'D' felony." The State did not charge Sundall under the furnishing alternative.

(Iowa Ct. App. 2005) (discussing federal case where outside sender transmitted unapproved mail through a courier); *see also State v. Stewart*, 858 N.W.2d 17, 21 (Iowa 2015) (noting defendant could "instruct a third party to cause illegal drugs to be smuggled into a detention facility without ever possessing them").

But neither *Caquelin* nor *Stewart* addressed a situation where the container holding the contraband was seized by law enforcement before it was introduced into the detention facility. Those cases dealt with merger and decided it was not "legally impossible" to be convicted of introduction without also being convicted of possession. But unlike the introduction-without-possession scenarios floated in *Caquelin* and *Stewart*, Sundall did not employ a courier or a smuggler to get her methamphetamine into the O'Brien County Jail. In fact, she lobbied mightily to have her bag left behind at the scene of the arrest.

Not deterred by that fact, the State suggests that the deputy is no different from the hypothetical courier or smuggler, acting on behalf of an accused. That suggestion overlooks the element of intent. A defendant who enlists a courier or smuggler acts with the intent to have that agent carry the contraband into the detention facility. By contrast, Sundall did not want her bag containing the methamphetamine to be taken into the jail. It also overlooks Sundall's relationship with the contraband. Once deputies lawfully seized her personal effects and retained them for safekeeping, she lost any ability to exert control over them. *Cf. State v. Bentler*, 759 N.W.2d 802, 807 (Iowa Ct. App. 2008). Sundall neither possessed the controlled substance when it was introduced nor did she intend its introduction.

Granted, introducing a controlled substance into a detention facility is not a specific-intent crime. *See State v. Canas*, 597 N.W.2d 488, 496 (Iowa 1999) (finding statutory language did not "require an intent to do any further act or achieve some additional consequence other than the prohibited conduct of introducing a controlled substance into a detention facility"), *overruled in part on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001). But even a general-intent crime requires proof of intent. *See Saadiq v. State*, 387 N.W.2d 315, 323 (Iowa 1986) (observing for general-intent crimes, we ask: did the accused intend to do the proscribed act?). And the State did not prove that Sundall intended to introduce a controlled substance into the jail. Instead, the deputy transported her bag to the jail for an inventory search against her wishes. The deputy testified: "She just wanted to leave it there."

So possession is not required. And intent to introduce doesn't matter. So what is the crime? In the State's view, "the act here is omission." Because Sundall didn't declare that she had methamphetamine in her bag, the State contends that she was responsible for the deputy's introduction of that controlled substance into the jail.

Cue *Canas*. The State reads that case as creating a duty to "alert police officers to the presence of contraband before entry into a detention facility." *See Canas*, 597 N.W.2d at 496. Failure to do so, in the State's estimation, violates the statute. *See id.* But the State's position stretches *Canas* beyond its limits.

A close look at *Canas* shows a far different situation. Police arrested Canas on an outstanding warrant; after his arrival at the jail, "he was directed to take a shower." *Id*. at 491. The jailer grew suspicious because Canas kept his underwear

with him while he showered. *Id*. at 492. When the jailer asked to see the underwear, Canas shoved the jailer, and later two baggies of methamphetamine were found in the shower. *Id*. Not surprisingly, Canas was charged with introducing a controlled substance into a detention facility. *Id.* Unlike Sundall, Canas possessed the methamphetamine inside the jail. But on appeal, Canas claimed that his trial counsel was ineffective for not making two arguments: (1) that Canas did not voluntarily commit the offense because he had to submit to police authority when arrested and (2) to avoid the charge Canas would have been required to admit possessing the drugs, an impermissible burden on his Fifth Amendment right to remain silent. *Id.* at 495–96. Our supreme court rejected those arguments, deciding that Canas's ability to act voluntarily was not negated by his submission to police authority and his conviction did not impermissibly burden his right against self incrimination. *Id*. at 497 (noting he "had the option of disclosing the presence of the drugs concealed *on his person* before he entered the jail").

But the supreme court did not hold that Canas's failure to confess his possession of the drugs before he entered the jail was the essence of the introduction offense. That's because Canas personally introduced methamphetamine into the jail's shower in his underwear. The prohibited act was introducing the controlled substance, as provided in the statute. *See id.*

Unlike *Canas*, here the deputy did the introducing. Sundall did not have the methamphetamine concealed on her person. And the State does not cite any case applying *Canas* to the search of containers seized from an arrestee and transported to the detention facility by law enforcement. Rather, the State relies

on cases involving contraband introduced into the premises by defendants on their persons. *See State v. Clark*, No. 15-0527, 2016 WL 2748288, at *3–4 (Iowa Ct. App. May 11, 2016) (marijuana found in sock); *State v. Gully*, No. 11-1961, 2012 WL 3860795, at *1–2 (Iowa Ct. App. Sept. 6, 2012) (marijuana found in pants pocket); *State v. Sanders*, No. 19-0342, 2020 WL 1548505, at *3 (Iowa Ct. App. Apr. 1, 2020) (baggie of marijuana found in defendant's mouth).[5]

The State maintains that having her bag brought into the detention facility was the "natural consequence" of Sundall's arrest and that it would have been "clearly improper" for the deputy to leave it unattended at the scene of the arrest. Maybe so. But these are not principles drawn from *Canas*. And they do not go to the heart of the offense—which is the *introduction* of controlled substances into the jail.[6] As we noted in *Borchers*, the legislature did not define the verb "introduce" in chapter 719. 2024 WL 467375, at *4. So we look to dictionary definitions. *Id*. For example, *Webster's Third New International Dictionary* 1186 (unabr. ed. 1993), defines "introduce" as "to lead, bring, conduct, or usher in especially for the first time." *See Laster v. State*, 64 S.W.3d 800, 803 (Ark. Ct. App. 2002) (construing introduce to mean "bring into from outside"). Under that definition, in *Canas*, *Clark*,

---

[5] The only case cited by the State where the contraband was carried into the detention facility by the police was *State v. Borchers,* reversing a conviction for knowingly introducing contraband under Iowa Code section 719.7. No. 22-1454, 2024 WL 467375, at *3–5 (Iowa Ct. App. Feb. 7, 2024). The State asserts *Borchers* was wrongly decided, but such unpublished decisions are persuasive authority. *See State v. Lindsey*, 881 N.W.2d 411, 414 n.1 (Iowa 2016) (noting "unpublished decisions of the court of appeals do not constitute binding authority on appeal" but may help "define the issues").

[6] As defense counsel told the jury in closing argument: "The word introduce is important here because that is the crime. If she did nothing at all to introduce the drugs into the facility, she cannot be held accountable for it."

*Gully*, and *Sanders*, it was the defendant who introduced the contraband into the jail. Not so here. The methamphetamine, concealed within a wallet, was brought into the detention facility by a deputy—who seized the larger bag that Sundall was carrying at the time of her arrest.

The State advocates for a broader definition of "introduce"—describing how the methamphetamine ended up inside the detention facility without being carried by Sundall: "when the arrested person fails to alert the officer to the presence of contraband accompanying them before it enters the place of detention, they are knowingly introducing it." The State's definition does not advance the goal of section 719.8. When interpreting criminal statutes, we consider "the evil sought to be remedied" by its enactment. *State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008) (citation omitted); *see also State v. Mathias*, 936 N.W.2d 222, 230 (Iowa 2019). "[S]ection 719.8 prohibits the introduction of a controlled substance into a detention facility because the introduction of contraband threatens the security and disrupts the balance of Iowa's penal institutions." *Caquelin*, 702 N.W.2d at 513. But there was no security threat or potential for disruption once Sundall's bag was in the deputy's control. And we are not convinced by the State's suggestion at oral argument that there remained a risk because an inept booking search may have overlooked the controlled substance.[7] Even if a booking search failed to uncover the presence of the controlled substance, Sundall would not have had access to it in the jail.

---

[7] The jailer testified the bag would be placed in a locker after the search and not be returned to Sundall until she left the jail.

Because the deputy—and not Sundall—controlled and transported the bag containing the contraband to the jail, the State did not prove that she introduced methamphetamine into the detention facility. She could not introduce an item that she no longer exercised dominion and control over. Even taking the evidence in the light most favorable to the State and making all reasonable inferences, there is insufficient evidence in the record for a reasonable jury to conclude that Sundall introduced contraband into the detention facility. We reverse that felony conviction and remand for dismissal.

### B. Possessing a Controlled Substance

Sundall urges two challenges to her conviction for possessing a controlled substance, third offense, in violation of Iowa Code section 124.401(5)(a). First, she argues that there is insufficient evidence to sustain her conviction. Second, she contends that her motion for new trial should have been granted because the jury verdict is contrary to the weight of the evidence.

*Sufficiency of the Evidence*. The district court instructed the jury that to find Sundall guilty of possessing a controlled substance, it must find that the State proved: (1) that "Sundall knowingly or intentionally possessed methamphetamine" and (2) that she "knew the substance she possessed was methamphetamine." *See* Iowa Code § 124.401(5)(a) (making it "unlawful for any person knowingly or intentionally to possess a controlled substance" with exceptions not relevant here). Sundall does not dispute that she possessed methamphetamine by carrying the bag in which it was found. But she argues that there was insufficient evidence that she knew the methamphetamine was in the bag. We disagree.

The record contains ample evidence from which the jury could find she knew she possessed methamphetamine. An officer saw Sundall get out of a vehicle, holding the bag that contained the methamphetamine. She requested that the bag be left in an unsecure car rather than being brought with her to the jail. Her request sparked suspicion for the officer, who testified that in his "training and experience, when someone knows they're about to go to jail, if they have something illegal on them, they tend to want to distance themselves from those objects." As it turned out, the bag contained not just methamphetamine and drug paraphernalia, but also Sundall's wallet and her identification card. And not only did the jury hear the officers testify about the encounter, but it also watched body camera footage of the incident and the search.

True, some evidence supported Sundall's contrary view. She was driving someone else's car when she was stopped. And she consented to the search of the bag. But that is not the question on substantial-evidence review—we ask only whether the evidence supports the verdict that the jury actually rendered. *See Jones*, 967 N.W.2d at 339. It does here. And so, we affirm the jury's verdict as supported by substantial evidence that Sundall knowingly possessed methamphetamine.

*Motion for New Trial*. Under our rules of criminal procedure, a defendant may request a new trial when a verdict is "contrary to law or contrary to the weight of the evidence." Iowa R. Crim. P. 2.24(2)(b)(7); *see State v. Wickes*, 910 N.W.2d 554, 570 (Iowa 2018). Motions for new trial must be filed no later than forty-five days after a guilty verdict *and* at least five days before sentencing. *See* Iowa R. Crim. P. 2.24(2)(a). So when sentencing is set for more than fifty days after the

verdict, a defendant must file the motion within forty-five days of the verdict. *Smith*, 753 N.W.2d at 564. But that deadline "may be extended by the court for good cause." Iowa R. Crim. P. 2.24(4)(a). We review a court's ruling denying a motion for new trial for abuse of discretion. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).

Sundall argues that the district court abused its discretion in denying her motion as untimely "without reaching its merits," and urges that we should decide in the first instance that the verdict was against the weight of the evidence. But as the State argues on appeal, the only question before us is whether the court abused its discretion in denying the motion as untimely. And Sundall's motion was untimely because she filed it sixty-nine days after the verdict—well past the forty-five-day deadline. *See* Iowa R. Crim. P. 2.24(2)(a); *Smith*, 753 N.W.2d at 564; *State v. Alexander*, No. 07-2048, 2008 WL 5412283, at *2 (Iowa Ct. App. Dec. 31, 2008) (affirming denial of motion for a new trial filed fifty-two days after verdict as untimely). Sundall did not ask for an extension before the court ruled on the motion. And while she did move to reconsider that denial, arguing she had good cause for the late filing, we see no abuse of discretion in the court's reasoning that it was too late to seek an extension.[8] We thus affirm the district court's denial of her motion for a new trial and Sundall's conviction for possessing methamphetamine.

---

[8] Sundall does not argue that the district court improperly thought it lacked authority to excuse the late filing in a reconsideration motion. So we need not decide here whether a court could find good cause and extend the deadline even after it has denied the motion as untimely.

**IV.  Summary**

We reverse Sundall's conviction for introducing methamphetamine into a detention facility and remand for dismissal.  But we affirm her conviction for possession of methamphetamine, as a third or subsequent offense.

**AFFIRMED IN PART, REVERSED AND REMANDED FOR DISMISSAL IN PART.**

Ahlers, J., concurs; Langholz, J., concurs in part and dissents in part.

**LANGHOLZ, Judge** (concurring in part and dissenting in part).

Under Iowa law, a person can commit the offense of introducing a controlled substance into a detention facility even when the person doesn't want to enter the facility—it is enough that she is arrested with the drugs concealed in her clothes or body and does not disclose them before being taken into the facility by the arresting officer. *See State v. Canas*, 597 N.W.2d 488, 495–96 (Iowa 1999), *overruled in part on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001). And the offense is a general-intent crime that does not require proof that the person specifically intended to introduce the drugs into the facility. *See id.* What's more, the person need not personally bring the drugs into the facility—or even ever possess them—so long as she causes the drugs to be introduced into the facility. *See State v. Stewart*, 858 N.W.2d 17, 21–22 (Iowa 2015).

Putting these past holdings together, it follows that a person also commits this offense when she is arrested carrying a bag concealing drugs, the arresting officer refuses her requests to abandon the bag and instead takes control of it and brings it along with the person into the facility, and the person chooses not to tell law enforcement of the drugs in the bag. The jury could have found that Sundall did just that. She was arrested carrying her bag concealing methamphetamine, unsuccessfully tried to get the officer to leave the bag on the side of the road rather than putting it in the front seat of the car that she knew was taking her to the jail, and still chose not to alert any officer that it contained methamphetamine.

I would thus affirm *both* of Sundall's convictions. And so, I respectfully dissent from the majority's reversal of her conviction for introducing a controlled substance into a detention facility in violation of Iowa Code section 719.8 (2022).

In arguing that she did not introduce the drugs into the detention facility, Sundall focuses on two aspects of the facts here: (1) that "[t]he bag was brought to the facility by law enforcement" and (2) that "she did not want the bag brought into the jail." Neither is a basis for distinguishing the governing precedents.

As for the first, while Sundall no longer had possession of the bag once the officer took it from her and placed it in the front seat, "possession is not a necessary legal element of introducing a controlled substance into a detention facility." *State v. Caquelin*, 702 N.W.2d 510, 512 (Iowa Ct. App. 2005); *see also Stewart*, 858 N.W.2d at 21–23 (agreeing with the reasoning of *Caquelin* to hold that dual convictions for introducing a controlled substance and possessing a controlled substance do not merge or violate the Double Jeopardy Clause). And the bag containing the drugs was only along for the ride into the detention facility because of Sundall's actions—carrying it when she was arrested and deciding not to alert the officer that it had drugs in it.[9]

To be sure, law enforcement officers had seized the bag and had control over whether Sundall could access it and where it would ultimately be taken in the car. But that's no different than the common case where the drugs are concealed in the arrestee's clothes rather than a carried bag. Even then, the officer seizes the arrestee—including the clothes she is wearing and any drugs concealed in them—and has control over what can happen with the clothes and where they will be taken. Consider if an arrestee had drugs in a coat pocket, would the officer let

---

[9] It would be a very different case if Sundall had not been carrying the bag with the drugs when stopped and arrested by the officer and Sundall were still charged with introducing drugs that the officer had found another way—like executing a search warrant or seized from another nearby person.

her remove the coat and throw it out the car window? Of course not. And yet despite that lack of control by the arrestee, when drugs are on the seized person Iowa appellate courts have repeatedly affirmed convictions for introducing a controlled substance into a correctional facility. *See Canas*, 597 N.W.2d at 496–97; *State v. Clark*, No. 15-0527, 2016 WL 2748288, at *2–4 (Iowa Ct. App. May 11, 2016); *State v. Gully*, No. 11-1961, 2012 WL 3860795, at *2 (Iowa Ct. App. Sept. 6, 2012). I see no reason that this case should be treated any differently merely because the officer exercised his control over Sundall and her belongings by placing the bag in the front seat rather than giving it back to her to carry as he took Sundall and her concealed drugs to the jail.

Sundall's second proposed distinction fares no better. True, the undisputed evidence shows that Sundall wanted to leave her bag on the side of the road where she was arrested and she objected when the officer put it into the front seat of the car. And so it was only because of her arrest—not any purpose to bring the drugs into the jail—that they were introduced. Yet that purpose is not required because this is a general-intent crime. *See Canas*, 597 N.W.2d at 495–96. And when the officer refused Sundall's requests to abandon the bag—letting her know that she and her bag with the methamphetamine were both headed to the jail[10]—Sundall chose not to disclose that she had methamphetamine in the bag. With that choice,

---

[10] Given the evidence or Sundall's knowledge that the bag was being transported with her to the jail and the statute under which Sundall was charged, I do not find *State v. Borchers* to be relevant to the proper analysis of this case. *See State v. Borchers*, No. 22-1454, 2024 WL 467375, at *3–5 (Iowa Ct. App. Feb. 7, 2024) (reversing conviction under different statute—section 719.7—that prohibits "knowingly introduc[ing] contraband" when "the State offered no evidence that [the defendant] knew the whereabouts of his bag after his arrest" or that "he knew about police procedures for handling personal effects after an arrest").

she caused the introduction of the methamphetamine into the jail. *See id.* at 496 (reasoning that the defendant "had the option of disclosing the presence of the drugs concealed on his person before he entered the jail and became guilty of the additional offense of introducing controlled substances into a detention facility"). Again, I see nothing about the different location of concealment of the drugs here that permits us to depart from applying that same logic.

Carving Sundall's conduct out of the scope of this offense thus requires undermining one of these governing supreme court precedents. And that is not our role as an intermediate appellate court. To be sure, a few states have chosen a different path than *Canas* and have held that their similar statutes do not apply when an arrestee and her drugs are taken to a jail by law enforcement. *See State v. Tippetts*, 43 P.3d 455, 457–60 (Or. Ct. App. 2002); *State v. Cole*, 164 P.3d 1024, 1027 (N.M. Ct. App. 2007); *State v. Eaton*, 177 P.3d 157, 161–62 (Wash. Ct. App. 2008). Indeed, as one might expect given that stricter rule, one of those states likewise rejected the applicability of its statutes when the drugs were in a wallet seized during the arrest rather than in the arrestee's clothes. *See State v. Getzinger*, 76 P.3d 148, 149 (Or. Ct. App. 2003).[11] But Iowa is in good company by taking the prevailing path in *Canas*. *See, e.g.*, *State v. Hinostroza*,

---

[11] And another state followed the reasoning in *Getzinger*, 76 P.3d at 149, to hold that its statute did not apply when the arresting officer put a seized bag in the front seat. *See M.A.F. v. State*, 80 So. 3d 1088, 1089 (Fla. Dist. Ct. App. 2012). Conversely, one state reached the opposite result, holding that arrestee caused contraband in her purse to be introduced into a jail even though the officer put the purse in front seat—after she had asked for medication she said was in her purse—and she never touched the purse before contraband was found at the jail. *See State v. Arredondo*, No. A22-0984, 2023 WL 4074020, at *1–2, 4 (Minn. Ct. App. June 20, 2023).

552 P.3d 1202, 1207–10 (Kan. 2024) (adopting the nationally prevailing view and collecting cases); *Beltz v. State*, 551 P.3d 583, 588–92 (Alaska Ct. App. 2024) (same); *State v. Gneiting*, 468 P.3d 263, 267–71 (Idaho 2020) (adopting the prevailing view—relying in part on our supreme court's decision in *Canas*).

Bottom line, substantial evidence supports the jury's finding that Sundall introduced a controlled substance into the jail when she knew her bag containing methamphetamine was being brought along with her into the jail and she chose not to alert law enforcement that it contained the methamphetamine. Because the majority nevertheless reverses Sundall's conviction for introducing a controlled substance into a detention facility, I respectfully dissent.